Duffy vs. The Chicago & Northwestern Railway Company.

DUFFY VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

32 269
83 664

RAILROADS. *Accident at crossing — Negligence — Contributory Negligence — Court and Jury.*

1. A railroad track, coming from the north, approached a highway (at a point within the charter limits of a city) through a deep cut, and the highway, which had run over a hill, was excavated by the railway company down to a level with the track, leaving a high bank of earth in the northeast angle, which prevented a person approaching along the highway from the south from seeing a train coming from the north until he came very near the track. In an action for injuries received from a train at this point by one driving a team attached to a wagon along the highway from the south, the evidence tended to show that the highway, just south of the crossing, ran between a ditch on the left and the bank on the right, and was too narrow for such a team to turn safely. There was also evidence tending to show that one driving on the highway from the south could not see along the track northward until his team was upon the track. *Held,* that upon this evidence the jury might have found that the railway company had failed to do its duty in restoring the highway "to its former usefulness," as required by law.

2. There was testimony from which the jury might have found that no whistle was sounded or bell rung until the locomotive reached the crossing. On appeal from a judgment of nonsuit, *held,* that upon this evidence the question of defendant's negligence should have been left to the jury.

3. The law did not impose upon plaintiff the duty of stopping his team, getting down from his wagon, and going on or near the track on foot to look for the train; and the fact that he did not do so is no evidence of contributory negligence. *Rothe v. M. & St. P. Railway Co.* (21 Wis., 256), distinguished.

APPEAL from the Circuit Court for *Dodge* County.

Action for injuries to plaintiff's person, alleged to have been caused by defendant's negligence in the running of a train, and in leaving the approach to a certain crossing of its road in the city of Watertown in an improper condition. The character of such crossing, and of the approaches thereto, is sufficiently

stated in the opinion. The complaint contains the following among other allegations: "That on or about the 4th day of June, 1869, this plaintiff was traveling on said highway in a northerly direction from said city of Watertown, with his team of two horses and lumber wagon; that about four o'clock in the afternoon of that day, while traveling as aforesaid, said plaintiff came near to and within about forty feet of said crossing on the south side thereof, at the same instant of time a train of freight cars drawn by an engine, all belonging to said defendant, and running from the north towards the south, on the track of said railway, suddenly came upon and over said crossing, through said cut or excavation on the north side thereof, and without any warning of whistle or bell; that said engine and cars were run and managed by said defendant, its agents and servants, and that when said engine had passed over said crossing, and was in close proximity to plaintiff's horses, and before said cars had passed the same, the agents and servants of said defendant carelessly, negligently and wantonly blew the whistle of said engine; that by the sudden appearance of said engine and cars at and upon said crossing without any warning, and by the noise of said whistle, all negligently and wantonly caused by said defendant and its agents and servants, the plaintiff's horses were greatly frightened and became unmanageable, and suddenly wheeled around and overturned said wagon in which said plaintiff was riding, and threw said plaintiff violently upon the ground, and threw the box of said wagon with great force upon said plaintiff," producing the injuries complained of. It is further alleged that plaintiff " did not and could not see or hear said engine or cars until the same were within a few feet of said crossing, and when it was too late for him to go over said crossing in advance of said engine; and that the reason he did not and could not see said engine or cars in time to avoid danger therefrom, was that the same were hid from his view by the bank of earth above described, which defendant negligently made in constructing said crossing, and

has ever since negligently allowed to remain between said highway and the track of said railway." The complaint further states " that said city of Watertown is an incorporated city, and that said crossing is within the limits thereof; and that defendant or its agents did not cause the bell on said engine to be rung, or the whistle thereon to be blown or sounded before passing said crossing; and that, as this plaintiff verily believes, said engine and cars were going very much faster than at the rate of six miles per hour when they approached and passed over said crossing, contrary to the statute of this state." The other allegations of the complaint need not be stated. There was an answer in denial.

After plaintiff's evidence was in, the court granted a judgment of nonsuit on defendant's motion; and from this judgment plaintiff appealed. The nature of the evidence will appear from the opinion.

*Harlow Pease*, for appellant, as to the duty of railroad companies to restore "to their former usefulness" highways intersected by their roads, cited R. S., ch. 79, sec. 11. As to the liability of such companies where they have negligently created or permitted obstructions to be interposed which prevent persons approaching a crossing from seeing or hearing trains approaching, and where injuries result, he cited *Mackay v. N. Y. Cent. R. W. Co.*, 35 N. Y., 75; *Richardson v. R. W. Co.*, 45 id., 846. To the point that the law requires of such companies the utmost care in crossing highways, especially in populous places, he cited *Butler v. R. W. Co.*, 28 Wis., 487. To the point that it is a question for the jury, whether, under all the circumstances, defendants used reasonable care, he cited 2 Cush., 439; *Brown v. R. W. Co.*, 34 N. Y., 404; *Langhoff v. R. W. Co.*, 19 Wis., 489. He also argued that a traveler upon a highway, in approaching a railroad crossing, is not required to stop, or, if he is with a team, to get out and leave his vehicle and go to the track, or to stand up in order to get a better view, and that, in the absence of any warning, he has a right to as-

sume that no train is approaching (*Davis v. R. R. Co.*, 47 N. Y., 400; *Ernst v. R. R. Co.*, 35 id., 9; *Beisiegel v. R. W. Co.*, 34 id., 622; *Richardson v. R. W. Co.*, and *Mackay v. R. W. Co.*, *supra*); and that the mere fact that there was no actual *collision*, and plaintiff was not on the track when the injury was received, did not prevent defendant's negligence from being a sufficiently proximate cause of such injury. *Pa. R. R. Co. v. Barnett*, 59 Pa. St., 259; *Hill v. R. W. Co.*, 55 Me., 438; *Foshay v. Town of Glen Haven*, 25 Wis., 288.

*Enos & Hall*, for respondent, argued that as there was no evidence to show that defendant failed to give the usual signals or blew the whistle at any improper place, the question presented was, whether the defendant was liable for injuries which plaintiff had sustained by reason of his team taking fright at a passing train of cars operated in the usual manner, and the circuit court answered the question correctly. Redfield on Railways, 473–475, and notes 19 and 25; *Galena R. R. v. Loomis*, 13 Ill, 548. Again, all the authorities are to the effect that a traveler upon a highway, approaching a railroad crossing, is required to make a vigilant use of his eyes and ears to ascertain whether there is a train approaching. This requirement is not satisfied by looking in one direction. The plaintiff had no right to suppose that the train from the north had passed down. If he had not relied upon this supposition, but had been vigilant to discover the approach of that train, he would not have been completely surprised by its approach. Under such circumstances he is not permitted to say that his own carelessness did not contribute to the injury. *Rothe v. M. & St. P. R. W. Co.*, 21 Wis., 256; Sh. & Redf. on Neg. (2nd ed.), § 488, and authorities there cited.

COLE, J. We are not informed by the record upon what precise ground the circuit court granted the nonsuit in this case.

It is argued in the first place by the counsel for the defend-

ant company, that the evidence entirely fails to show that by the construction of the railroad track at the place where the accident happened the highway was rendered insufficient or dangerous; or that there was any negligence on the part of the agents in the management of the freight train. It does clearly appear, however, that the railroad track approaches the highway at that crossing from the north through a deep cut, and that the highway has been excavated down to a level with the track, forming a high bank of earth in the northeast angle, which prevents a person coming from the south from seeing a train coming from the north, until he is very near the track. The evidence tended to show that the highway just south of the crossing ran along between a ditch on the left and the bank on the right, and was too narrow for a team attached to a wagon to turn around in safety. There was testimony from which the jury might have found that the highway was not restored by the company to its former usefulness, within the meaning of the statute, and that the crossing at that place was attended with more than the usual peril. The witness Slight described the place, substantially as follows: "There was a hill in the highway, and there is a deep cut for the railroad right through it. It is a high bank. The cut for the railroad through there is north and south. The high road is cut down to a level with the railroad. Before the railroad was built, we used to go a little south of the present crossing. * * The height of the bank on the right I never measured, but it is some feet above my head. It is a very bad crossing; a person coming up from the city and going north is going into a pocket, a three cornered place; when you get up near the crossing of the railroad, you have to get your team on the track before you can see up the track; if there is any trouble you can't get clear; you have no chance to turn again; there is not space enough; it is not wide enough to turn around. If the head of the horses is on the track, I think the wagon stands in fourteen or fifteen feet space between the bank on the right and the

ditch on the left." There was other testimony to the same effect. This evidence certainly tended to show that the company, by constructing its road across the highway at that place in the manner it did, had failed in its duty and had not restored such highway "*to its former usefulness.*"

Again, there was testimony which tended to show, and from which the jury might reasonably have inferred, that no whistle was sounded, nor bell rung, until the locomotive reached the crossing. This crossing was within the corporate limits of the city of Watertown. The statute made it the duty of those having charge of the train, to ring the bell or give some warning of the approach of the train to persons traveling on the highway and advancing upon that crossing. A failure to perform this duty would be negligence, which would render the company liable for an injury sustained in consequence of this neglect of duty. A warning given just as the engine came upon the crossing would afford but little protection to the traveling public, and would not enable a person approaching the crossing with a team to avoid danger.

Then, upon the question of contributory negligence on the part of the plaintiff, it is insisted by the counsel for the company that the testimony shows that he was not in the exercise of proper care when he approached the crossing, and that the nonsuit was right for that reason. It does not appear that the plaintiff was guilty of any carelessness or want of care in approaching the crossing. He says that he listened some for the train, but did not hear anything. He supposed the train from the north had passed down, and he was looking out for the train from the south more than from the north. The track at the north was so obstructed by the high bank on the right that it was impossible for the plaintiff to see the train approaching from that direction until he was within fifteen feet of the track. All the precaution he could take to ascertain whether a train was approaching was to listen as he advanced towards the crossing, unless he stopped his team, got out of his wagon, and

went upon the track and looked north for the train. But this would be exercising extraordinary care, and diligence greater than the law imposed upon him. The cases to which we are referred by the counsel for the plaintiff are decisive upon this question. (See *Davis et al. v. N. Y. C. & H. R. R. Co.*, 47 N. Y., 400; *Richardson v. N. Y. C. R. R. Co.*, 45 id., 847; *Ernst v. Hudson River R. R. Co.*, 35 id., 10; *Mackay v. N. Y. C. R. R.*, id., 75; *Beisiegel v. N. Y. C. R. R.*, 34 id., 622.)

This case is clearly distinguishable from that of *Rothe v. The Mil. & St. P. R. R. Co.*, 21 Wis., 256. There the deceased, after placing two bags of shorts on his right shoulder, which completely obstructed his view on that side, and doubtless prevented him from hearing with the right ear, deliberately walked upon the track, and was struck by moving cars. He voluntarily deprived himself of sight in the direction the cars were coming, and took no precautions to make sure that the road was clear. (See *Butler v. The Mil. & St. Paul R'y Co.*, 28 Wis., 488.) Here the plaintiff did make all the use of his sense of sight and hearing that he could; but, on account of the deep cut and high bank on his right, he could neither see nor hear the approaching train.

It seems to us the court should have submitted the case to the jury upon proper instructions as to the rule of law applicable to the facts. Whether the injury was caused by any neglect of duty on the part of the company in originally constructing its road at that highway crossing in the manner it did; or whether those in charge of the train omitted the statutory requirements of blowing the whistle or ringing the bell while approaching the crossing, or were running at a greater rate of speed than six miles an hour; these questions, together with the question whether the plaintiff was guilty of any contributory negligence, were matters for the jury to detetmine upon the evidence.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.