Roberts vs. Chicago & Northwestern Railway Company.

ROBERTS VS. CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RAILROADS: HIGHWAY CROSSINGS: NEGLIGENCE. (1) *Restoring highway at crossing; duty of company.* (2) *Its negligence a question for the jury.* (3) *Such negligence properly found in this case.* (4, 5) *Giving warning at crossing; duty of company; question for jury.* (6) *Contributory negligence.*
NEW TRIAL. (7) *Excessive damages.*

1. Under the statute (R. S., ch. 79, sec. 11) which requires a highway over which a railway is constructed to be restored " to its former usefulness," the railway company must so restore it that its use by the public shall not be materially interfered with, nor the highway be rendered less safe and convenient to persons and teams passing over it — except so far as diminished safety and convenience are inseparable from any crossing of the highway by a railroad.

2. In an action against a railroad company for injuries inflicted by defendant's train, at a highway crossing, upon a person traveling on such highway, the question whether the railroad was constructed with proper care, so as to render the crossing as little dangerous as possible to the public in the use of the highway, is a pure question of fact for the jury, upon the evidence. *Duffy v. Ch. & N. W. R'y Co.,* 32 Wis., 269, approved and reaffirmed.

3. There was testimony in this case similar to that given in the Duffy case above cited (the crossing in question being the same), and there was also put in evidence a diagram or photograph of the premises, which tended to show that the crossing was rendered more dangerous by the earth thrown by the defendant upon the natural bank to the right of the highway, which increased the difficulty of seeing or hearing trains coming from the north. *Held,* that upon the whole evidence the jury were warranted in inferring negligence on the part of the defendant in the construction of its road at this crossing.

4. Plaintiff testified that as he approached the crossing with his team, on

the highway, he heard no bell or whistle, and could not see defendant's train on account of a high bank which intervened. *Held*, that upon this evidence there was a question for the jury, of negligence on defendant's part in failing to give proper warning.

5. If the bell and whistle on defendant's trains approaching said crossing from the north, can give no warning to persons approaching it with teams on the highway from the south, because of the high bank intervening, then defendant is *bound to employ some other means* of giving such warning.

6. Plaintiff testified that at the time of the accident in question, he was driving along slowly, with a gentle horse, "*on a little trot*," expecting that if a train were coming, warning would be given by bell and whistle, but unable to see a near approaching train from the north, until he got within a few feet of the track, by reason of the intervening bank. *Held*, that upon this evidence the question whether he was guilty of *contributory negligence* was properly left *to the jury*.

7. The evidence was, that plaintiff was thrown out of his buggy by the accident, and so severely bruised as to be confined to bed for three weeks. The jury awarded him three hundred and fifty dollars damages. *Held*, that there was no error in denying a motion for a new trial on the ground that the damages were excessive.

APPEAL from the Circuit Court for *Dodge* County.

Action for injuries to plaintiff's person, alleged to have been caused by the negligence of defendant in running its cars, and in the improper construction of a railroad crossing upon a highway leading out from the city of Watertown. The *locus in quo* was the same, and the circumstances of the injury were very similar to those in *Duffy v. The Chicago & Northwestern Railway Company*, reported in 32 Wis., 269.

One witness, John P. Slight, sworn in behalf of the plaintiff, testified substantially as follows: "I have known the Oak Grove road for twenty-eight years. It has been used as a public highway that time. I know where the *Chicago & Northwestern Railroad* crosses it in the city of Watertown. The surface of the ground there was higher before the railroad was built than at the present time. There was a hill there running to the southwest. The railroad was built through it from north to south * * ; think it angles a little. There is a

cut some six or seven feet deep through this bank for the rail-road, and the high road is cut down to a level with the rail-road track. Originally we crossed about four or five rods south of the present crossing, that is, before the railroad was built * * in 1859. Approaching the crossing from the south, there is a high bank of earth to the right of the track, some feet above my head. There is some waste dirt thrown upon this bank on the right hand side, also an old fence, some brush, and one thing and another. The width of the highway, as you approach the crossing, between the bank and ditch, is from fifteen to twenty-two feet. This is near the track. Fur-ther south it is wider. There is not room enough there to turn a team around in with a double wagon, unless you would occupy a part of the railroad and the ditch alongside of it. Have tried the experiment, driving up there, to see how near I would have to go to the track before I could see whether a train is coming from the north on the track. Sitting on a common seat of a wagon, can see up the track, looking north, when my horses are twelve or fifteen feet from the track. In the valley, seventy rods southeast of the crossing, to-wards Watertown, those acquainted with the track can discover the smoke of the train. From that point, up to the time you get to the track, you can't see the train at all. * * * Pret-ty much all the northern travel out of Watertown travels on this highway. There is no other highway out of Watertown on the west side in that direction. * * * This place that a man goes into, formed by the railroad and highway, is three cornered, * * * very narrow. Coming from the south way, it is a kind of three-cornered pocket. * * * With a four-wheeled vehicle, you can't turn around."

Other evidence was introduced to substantially the same effect; and a diagram or photograph of the place was also produced and shown in corroboration.

The plaintiff testified that he was unacquainted with the road, and had never traveled it previous to the accident, though

he knew there was a crossing there; that he came through Watertown on his way home with a horse and buggy, the buggy containing only himself and wife, and, as he approached the crossing, was driving along at his usual pace, a slight trot, seeing nothing of any train, and hearing no bell or whistle or other noise or signal, until close upon the track, when a locomotive with train attached passed by, frightening his horse, which was usually gentle and perfectly manageable, and rendering him uncontrollable, in consequence of which the witness was thrown out close upon the track, and sustained severe injuries, by reason of which he was confined to his bed for a period of three weeks.

The defendant moved for a nonsuit, on the ground that the plaintiff was guilty of negligence in approaching the crossing. This motion being denied, the case was submitted to the jury, who brought in a verdict for the plaintiff for $350 damages. Thereupon defendant moved, on the minutes of the court, for a new trial, on the grounds, 1. That the exceptions to rulings of the court, or some of them, were well taken; 2. That the evidence was insufficient to sustain the verdict; and 3. That the damages were excessive.

The motion was denied; and the defendant appealed from a judgment on the verdict.

*D. Hall*, for appellant:

1. There was no testimony to show the condition of the highway at the crossing before the railroad was built, and consequently it could not be determined from the evidence either that the company had failed to restore the road to its former usefulness, as required by the statute, or that it was lower or narrower than it previously had been. Even if it was defective in the respects last mentioned, such defects did not in this instance contribute to the injury, and do not enter into the case. 2. The plaintiff himself was guilty of gross carelessness in his manner of approaching the crossing. The testimony showed that he made use of neither his eyes nor his ears, but

drove up on a trot to the very track of the railroad in full view of the coming train, while the rattle of his buggy necessarily drowned the noise of the cars. This was contributory negligence, such as would prevent his recovery. 2 Redf. on Railways, 200, §§ 17 et seq.; 18 N. Y., 422; 24 id., 430; *Ernst v. H. R. R. R. Co.*, 35 id., 9, 47; *Gonzales v. N. Y. & H. R. R. R. Co.*, 38 id., 440; *Wilcox v. R. W. & O. R'y Co.*, 39 id., 358; *Davis v. N. Y. Central R'y Co.*, 47 id., 400; *Gillespie v. Newburg*, 54 id., 468; *Rothe v. M. & St. P. R'y Co.*, 21 Wis., 256; Shear. & Redf. on Neg., § 488. 3. The damages were excessive. Plaintiff does not pretend to have suffered pain or any permanent injury, or any inconvenience, after the three weeks during which he was confined to his bed. He employed no physician, and his time was of little value.

*Harlow Pease*, for the respondent, cited the case of *Duffy v. Ch. & N. W. R'y Co.*, 32 Wis., 269, as almost identical with and conclusive of the one at bar. Among other points made by him were the following: 1. Railroad companies, in running their trains across highways in populous places, are held to the utmost care, and a compliance with statute regulations will not excuse them when the circumstances are such as to render other precautions on their part necessary or reasonable for the prevention of injuries to travelers. *Brown v. N. Y. C. R'y Co.*, 34 N. Y., 404; 2 Cush. (Mass.), 439; *Butler v. Mil. & St. P. R'y Co.*, 28 Wis., 487; *Richardson v. N. Y. C. R'y Co.*, 45 N. Y., 846; *Mackay v. Same*, 35 id., 75. 2. The plaintiff had a right to presume that the defendant would comply with the law and give him notice of the approaching train. He was not bound to stop, or to leave his team and go upon the track to obtain a better view, but had a right, in the absence of any warning, to assume that no train was approaching, and that the crossing was safe. *Ernst v. Hudson River R. R. Co.*, 35 N. Y., 9; *Wood v. Luscomb*, 23 Wis., 287; *Kellogg v. Ch. & N. W. R'y Co.*, 26 id., 223; *Davis v. N. Y. Cent. & H. R. R. R. Co.*, 47 N. Y., 400; *Beisiegel v. N. Y. Cent. R'y Co.*, 34

id., 622 ; 45 id., 846 ; 35 id., 75.   3. The question of plaintiff's contributory negligence, under the circumstances, was one for the jury.   *Wheeler v. Westport*, 30 Wis., 392 ; *Kavanaugh v. Janesville*, 24 id., 618 ; *Duffy v. Ch. & N. W. R'y Co.*, *supra*.

COLE, J.  The counsel for the defendant company made a vigorous effort to take this case out of the ruling of this court in *Duffy v. The Chicago & Northwestern Railway Co.*, 32 Wis., 269, and to show that the decision there made was inapplicable to the case at bar.   He contended that the decision in that cause was made under an erroneous impression of the facts, and a mistake as to the situation of the railway crossing across the highway at the place where the injury both in that case and in this was sustained.   We think, however, that the condition of the crossing, the situation of the highway and railway track, as well as all the surrounding circumstances bearing upon the question whether the company, in constructing its road over the highway, had restored such highway to its former state so as " not materially to interfere with its usefulness," were quite well understood when that decision was made.   And, after a careful examination of the evidence before us, we see no reason for modifying or changing the views expressed in the former case, in regard to the inference a jury might legitimately draw from the manner in which the company constructed its road across the highway at that place.   It seems to us that, upon the facts disclosed in the evidence, both in that case and in this, the jury might well find that the crossing was rendered extremely dangerous to persons approaching the railway track along the highway from the south, and that the company had failed to restore the highway to its former usefulness, as required by the statute, and that this was the cause of the injury to the plaintiff.   For it is to be remembered that the company was authorized to construct its road across the highway only upon condition that it restored such highway " to its former state," so that its use by the public would not be materially interfered with,

or the highway be rendered less safe and convenient to persons and teams passing over it. It is true that a highway crossed by a railway track is rendered somewhat less safe and convenient, from the rapid passing of railroad trains and the natural action of railroads; but still crossings are sometimes rendered more dangerous than they need be, on account of the manner in which the railroad is constructed. Now it is obvious that the question whether the railroad was constructed with due and proper care so as to render the crossing as little dangerous as possible to the public in the use of the highway, and to avoid accidents at that place, was a pure question of fact, to be determined by the jury in view of the facts and all the surrounding circumstances. It is impossible to affirm as a matter of law, that the company had been guilty of no negligence or want of proper care in the original construction of its road at that crossing, which tended to produce the injury. There certainly was testimony bearing upon the question of negligence, from which the jury might have found that the company did not perform the duty imposed upon it by law in the first instance. The testimony of the witness Slight, which is substantially the same it was in the Duffy case, as to the manner in which the road is constructed at that crossing, is certainly sufficient to carry the case to the jury upon the question of negligence. Besides, there was other testimony affecting the question, namely, the diagram or photograph of the premises which was given in evidence, which tended to show that this crossing was rendered more dangerous by the earth thrown upon the natural bank to the right of the highway, which increased the difficulty of seeing or hearing trains coming down from the north. But, without dwelling upon the evidence, we will merely say upon this point that the jury were warranted in inferring negligence on the part of the company, in the manner in which its road was constructed at this crossing. And furthermore, there was likewise evidence which tended to prove that no bell was rung, nor whistle sounded, on the train which caused the injury, to

warn persons coming from the south on the highway that a train was approaching. The plaintiff says he heard no bell nor whistle, and he could not see the train on account of the high bank which shut off his view to the north. The counsel for the company suggested that ringing of the bell or sounding of the whistle, on a train approaching from the north, would give no warning and could not be heard, because of the high bank on the right of the highway. Then surely some other means should be employed by the company to inform persons traveling on the highway from the south, that trains were approaching that crossing.

The counsel for the defendant also claims that the evidence shows contributory negligence. But whether the plaintiff approached the track in a reasonably prudent and cautious manner, or whether he was wanting in care and diligence, were manifestly questions of fact for the jury. The circuit court submitted those questions to the jury upon all the evidence, and the jury must have found that the plaintiff exercised that degree of care and caution in approaching the crossing which the law required. The defendant's counsel predicates negligence on the fact that the plaintiff approached the crossing with his horse on a "little trot," as he testified. But the court could not say, as a mere question of law, that such driving, under the circumstances, constituted negligence. It was the duty of the plaintiff to use due care and caution in approaching the crossing, and it was for the jury to say whether he did exercise that degree of diligence which men of ordinary prudence would use under similar circumstances. It was for the jury, and not for the court, to determine whether the plaintiff, in driving his horse along the highway "just on a little trot," was negligent. This, it seems to us, is too plain to require further remark. The counsel says the plaintiff was driving along in full view of the train without using his eyes or ears, until he was arrested by his horse coming in direct contact with the cars. This is a mistake. The evidence shows that it was im-

possible for him to see the coming train until within a few feet of the track. That fact is established by undisputed evidence. The plaintiff was driving along from the south slowly, with a gentle horse, and expecting, as he says, if a train was coming, that some warning would be given by ringing the bell or sounding the whistle. This expectation was reasonable and natural.

The only other point made in the case is, that a new trial should have been granted because the damages found by the jury were excessive. The verdict was for $350, a sum not disproportionate to the injury sustained.

It results from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.