The President and Trustees of West Bend vs. Mann and another.

THE PRESIDENT AND TRUSTEES OF THE VILLAGE OF WEST
BEND VS. MANN and another.

| 59 | 69 |
| 77 | 365 |
| 59 | 69 |
| 105 | 395 |

*November 22 — December 11, 1883.*

HIGHWAYS. *(1) Obligation to repair bridge over raceway. (2) When irregularities in laying out highway do not affect such obligation.*

1. If the owner of land over which a public highway passes cuts a raceway across the road, he is bound to bridge it and to keep the bridge in repair; and subsequent owners who maintain the raceway are under the same obligation. If, after being duly notified, the owner refuses to make necessary repairs, the town or village in which the bridge is situated may make them and recover the expense thereof from the owner.

2. Though the laying out of such highway was irregular, yet if it was opened, worked, and traveled before the raceway was dug, and the owners of the land have maintained and kept in repair a bridge over the raceway until the irregularities are cured by limitation, they are subject to the same obligations as though the highway had been legally laid out.

APPEAL from the Circuit Court for *Washington* County. The case is thus stated by Mr. Justice CASSODAY:

" This is an action to recover the amount of moneys expended by the plaintiff in repairing a certain bridge in a highway, which, it is alleged, the defendants were in duty bound to keep and maintain. At the close of the trial the court found, in effect, that the highway was laid out and opened by the commissioners of the town of West Bend, October 23, 1846, and had ever since been a public highway and used as such; that in June, 1847, E. B. Wolcott dug a raceway across the highway in question, and, at the same time and at his own expense, built the bridge over the same, in and as a part of said highway; that the defendants, deriving their title by mesne conveyances from Wolcott, were the owners of the premises where the raceway and bridge were constructed, in August, 1879, and they and their

grantors had, since June, 1847, from time to time and at their own expense, repaired and renewed said bridge; that in August, 1879, the bridge became out of repair, and in an unsafe and dangerous condition; that the plaintiffs notified the defendants thereof, and requested them to repair the same, but that the defendants refused and neglected to do so; that thereupon the plaintiffs necessarily paid out and expended, in and about the repairing of said bridge, $52.35. As conclusions of law the court found, in effect, that the highway in question was, at the time the raceway was dug, a legal and valid highway, and that it was the duty of Wolcott to bridge the raceway at the point where the same crossed the said highway; that in August, 1879, the defendants were, and still are, bound to keep said bridge in repair, and that the plaintiffs were and are entitled to judgment for the amount so expended by them in repairing said bridge. From the judgment entered in accordance with such findings the defendants appealed."

For the appellants there was a brief by *Frisby & Weil*, and oral argument by *Mr. Frisby*. They contended, *inter alia*, that at common law, when a race was dug across a public highway for private purposes, it existed without legal authority and by mere sufferance, and took the character of a nuisance when not properly bridged and kept in repair. The maintainer of such raceway is liable for special injuries sustained by means of its being out of repair, but the public has no remedy except by indictment or other prosecution for its abatement as a common nuisance. *Lansing v. Smith*, 8 Cow., 146, 156, 157; *Comm. v. Gowan*, 7 Mass., 378; *Turnpike Co. v. People*, 14 Wend., 267; *Wetmore v. Tracy*, id., 250; *Dygert v. Schenck*, 23 id., 446; *Congreve v. Smith*, 18 N. Y., 79; 1 Thomp. on Neg., 340, note 1; *Perley v. Chandler*, 6 Mass., 453, 458. The village has no such property or interest in the street as to be able to maintain a special action. It should have proceeded to abate the bridge

and race as a nuisance, or under the statute which gives an action for treble damages — if the defendants are liable at all. *Cornell v. B. & Q. Turnpike Co.*, 25 Wend., 366; R. S., sec. 1327; *Town of Sheboygan v. S. & F. du L. R. R. Co.*, 21 Wis., 667; 1 Thomp. on Neg., 341, note 2. Cases cited to sustain the position that the village may make repairs and bring an action for the moneys so expended, are based upon statutes specially imposing the duty upon the person or corporation, or where a privilege has been granted to make and maintain the structure complained of, so that it could not be treated and removed as a nuisance.

For the respondent there was a brief by *Miller & Miller*, and oral argument by *Mr. Benj. M. Miller.*

Cassoday, J. 1. Assuming that the record of laying out the highway in question by the commissioners was irregular, so as not to show a legally laid out highway in October, 1846, yet it appears from the evidence that it was opened, worked, and traveled prior to the digging of the raceway. This being so, the subsequent digging of the raceway across the highway, and the bridging of the same at the place of such crossing by Mr. Wolcott, who owned the land at the time, was a direct recognition of and acquiescence in the existence and legality of such highway. Such recognition and acquiescence were continued by the grantees of Wolcott in the subsequent repairing and maintenance of the bridge by them, until after all irregularities in laying out the highway had been set at rest by the statute of limitations. Sec. 80, ch. 16, R. S. 1849 (sec. 85, ch. 19, R. S. 1858; sec. 1294, R. S.). Under this statute the highway in question became established beyond all controversy as a public highway by user prior to 1860, and the owners of the raceway, during all the time from 1846 to 1879, recognized and acquiesced in its existence as such highway. Assuming that the defendants, as owners of the raceway, would have been in duty

The President and Trustees of West Bend vs. Mann and another.

bound to maintain the bridge and keep it in repair, had the road been legally laid out in October, 1846, which seems to be conceded, then we are clearly of the opinion that the defendants are in no position to escape such liability merely on the ground that some remote grantor of the premises might, had he chosen to do so, have legally obstructed the highway by reason of some irregularity in the laying out of the same. We must, therefore, under the facts here presented, hold the defendants to the same obligations they would have been subjected to had the proceedings in laying out the highway been in all respects regular.

2. In New York it has been distinctly held that where the owner of land over which a public highway passes digs a raceway across the road to conduct water to his mill, and builds a bridge over the raceway, and an injury is sustained by any one in consequence of the bridge being out of repair, such owner is liable in damages to the party aggrieved. *Dygert v. Schenck*, 23 Wend., 446; *Heacock v. Sherman*, 14 Wend., 58; *Creed v. Hartmann*, 29 N. Y., 595; *Congreve v. Smith*, 18 N. Y., 79. A similar rule prevails in Massachusetts. *Perley v. Chandler*, 6 Mass., 454; *Inhabitants of Woburn v. Henshaw*, 101 Mass., 198; *Lowell v. Proprietors*, 104 Mass., 21. The leading cases cited from these two states were followed in Pennsylvania. *Woodring v. Forks Tp.*, 28 Pa. St., 361; *Phœnixville v. Phœnix Iron Co.*, 45 Pa. St., 135; *Hays v. Gallager*, 72 Pa. St., 136. The rule in other states thus indicated must be followed here. The same rule has been applied to railroad corporations in this state by virtue of the duty imposed in their charters. *Duffy v. C. & N. W. R'y Co.*, 32 Wis., 269; *Roberts v. C. & N. W. R'y Co.*, 35 Wis., 679. A similar rule has been recognized in England. *King v. Kent*, 13 East, 220; *King v. Lindsey*, 14 East, 317.

3. Does such liability extend to a subsequent grantee? In *Woodring v. Forks Tp., supra*, the court observed thta

"as he (the owner) has no right to injure the public ease-ment, he is bound, in order to preserve that right, not only to construct bridges over the ditches where they cross highways, but also to keep them in repair. The duty of keeping such bridges in repair is as imperative as the orig-inal obligation to construct them. He could not be per-mitted to cut the ditch without erecting the bridge. He is bound to keep the bridge in repair, because he erected it for his own benefit. . . . It follows from these principles that a subsequent owner of the land, who continues a watercourse across a highway for the use of his mill, and thus renders a continuance of the bridge necessary, is liable for the repairs of the bridge." See, also, *Inhabitants v. Henshaw, supra,* and *Comm. v. Fisher,* 6 Met., 433. This liability is based upon the theory that the original interference, for private bene-fit, with such public highway, without restoring the same to a safe and proper condition for public travel by the building of the bridge, would have been a public nuisance, and hence to allow the bridge to become dilapidated or out of repair, so as to become dangerous to public travel by reason of the raceway, is to restore or reproduce the nuisance. It is like the maintenance of a nuisance by persons acquiring title to the land upon which it exists after the nuisance has been created. *Cobb v. Smith,* 38 Wis., 21. Such grantee is cer-tainly liable for continuing such nuisance after notice to repair it. *Slight v. Gutzlaff,* 35 Wis., 675.

4. But the mere fact that the defendants would have been liable to travelers for any injury to them by reason of any defect in the bridge in question, does not take away the duties and liabilities of the plaintiff, which succeeded to the rights, duties, and liabilities of the original town. In *Houfe v. Town of Fulton,* 34 Wis., 608, the defective bridge had been constructed by a private party before it was adopted by the town by public user, but the town was nevertheless held liable. To the same effect is *Requa v. Rochester,* 45 N. Y., 129.

5. Such being the duties and liabilities of the respective parties, we must hold that the defendants, being primarily liable to maintain and keep in good repair the bridge in question, so long as they continue their raceway beneath the same, and having neglected and refused to so repair and maintain the same after being duly notified, the plaintiffs had the right to restore the bridge to a safe condition; and, having done so, the defendants are justly liable to them for the amount of money so expended by the plaintiffs for that purpose. Such recovery was expressly sanctioned in *Penn. R. R. Co. v. Duquesne*, 46 Pa. St., 224, and *Town of Centerville v. Woods*, 57 Ind., 192.

*By the Court.*— The judgment of the circuit court is affirmed.