SEEFELD, Appellant, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*November 7 — November 22, 1887.*

*Railroads: Highway crossing: Contributory negligence: Court and jury.*

1. If the view of a traveler on the highway approaching a railroad crossing is so obstructed that he cannot see an approaching train in time to stop his team before colliding with it, if he knows that a train is due at such crossing at or about such time, and if he is unable to hear the approaching train when his team is in motion, whether by reason of the force and direction of the wind or of noises in the vicinity, whether made by his own wagon or by other causes, ordinary care requires him to stop his team while he may do so, and listen for the train.

2. If the testimony relating to contributory negligence is conflicting, or not being conflicting, if the inferences to be drawn therefrom are doubtful or uncertain, the question is one for the jury. But if the evidence is undisputed and the inferences therefrom plain and certain, the question is one of law for the court.

APPEAL from the Circuit Court for *Marathon* County.

This is an action to recover damages for injuries to the person and property of the plaintiff, alleged to have been caused by the negligence of the employees of the defendant company in operating one of its trains on the Wisconsin Valley division of the company in the city of Wausau.

The railroad of the defendant company passes through that city from north to south on the east side of and near

the Wisconsin river. Bridge street in said city runs east and west, crossing the railroad. A spur track, commencing south of such crossing, extends north, also crossing Bridge street about thirty-two feet east of the main track. At such crossing the spur track is between three and four feet higher than the main track. At a point almost 227 feet east of the crossing of the main line, Bridge street crosses First street. From a point west of the crossing of the main line, Bridge street is planked sixteen or eighteen feet in width, east, to a point within about forty-five feet of First street. In the northeast angle of Bridge street and the spur track there is a planing mill, with a platform in front and to the west of it extending to the spur track. At the time of the accident there were piles of lumber upon such platform, and box cars standing upon the spur track, extending in front of the platform south to, and probably upon, Bridge street. There was also a car on that track, south of the others and partly in the street, with an opening between it and the other cars for the passage of teams on the plank way.

During the afternoon of July 27, 1885, the plaintiff, who resided west of Wausau and had come into the city that morning over such crossing, started for his home, and drove his team of horses, hitched to a common lumber wagon, north on First street to Bridge street. He then turned west on the latter street. He had in his wagon eight barrels of lime, a keg of nails, and other articles of merchandise. His daughter was with him. Immediately preceding him, going in the same direction, was a team and wagon driven by one Gerst. This wagon was loaded with large wooden frames about twelve feet in length, laid across the top of the wagon box and piled as high as an ordinary load of hay. Gerst was riding on the top of the load. Immediately behind the plaintiff was another team which was being driven in the same direction.

Bridge street descended very gradually from First street to the spur track, and from thence there was a sharp descent to and beyond the main track. A team with a loaded wagon being driven on that street can easily be stopped at any time before the wagon gets across the spur track, but it is difficult to stop after that until the main track is crossed. From a point on Bridge street a few feet west of the corner of First street, to the spur track, a train on the main line could not be seen by the plaintiff when he was passing there, the view being obscured by the planing mill, the lumber piles on the platform, and the cars standing upon the spur track. The plaintiff drove his team on a walk, and looked and listened for passing trains, but did not stop his team. Gerst drove his team across the main track in safety. He saw a train approaching the crossing from the north when he was between the two tracks, and hastened the speed of his team. When the plaintiff had crossed the spur track he saw the same train, then in the immediate vicinity of the crossing. It was too late to stop his team. He reined them to the south, but not in time to clear the train. Either the locomotive or the tender struck his team, killing one of his horses and injuring the other, overturning the wagon, destroying the property therein, and inflicting serious injuries upon the person of the plaintiff.

The speed of this train, which had been at the rate of almost thirty-five miles an hour, was slackened to about fifteen miles an hour when it passed the crossing. Whether any signal was given from the locomotive by ringing the bell or blowing the whistle as the train approached the crossing, was a disputed question of fact on the trial.

After the testimony was all in which established the facts above stated, the circuit judge directed the jury to return a verdict for the defendant, on the ground that the evidence showed conclusively that the plaintiff was guilty of negligence which contributed directly to the injuries of which he

Seefeld vs. The Chicago, Milwaukee & St. Paul R. Co.

complains.   A motion for a new trial was denied, and judg-
ment entered pursuant to the verdict.   The plaintiff appeals
from the judgment.

For the appellant there was a brief by *Bardeen, Mylrea
& Marchetti*, attorneys, and *G. W. Cate*, of counsel, and
oral argument by *Mr. Bardeen.*   They contended, *inter
alia*, that a traveler approaching a crossing has a right to
assume that the railroad company will not run its train at
an unlawful or dangerous speed or without giving the re-
quired signals.   *Beiseigel v. N. Y. C. R. Co.* 34 N. Y. 622;
*Langhoff v. M. & P. R. Co.* 19 Wis. 489;  *Wabash, St. L. &
P. R. Co. v. Central Trust Co.* 23 Fed. Rep. 738;  *Guggen-
heim v. L. S. & M. S. R. Co.* 33 N. W. Rep. (Mich.), 165;
*Staal v. G. R. & I. R. Co.* 57 Mich. 239;  *Kellogg v. C. &
N. W. R. Co.* 26 Wis. 255;  *Ditberner v. C., M. & St. P. R.
Co.* 47 id. 143;  *Kelly v. C., M. & St. P. R. Co.* 50 id. 385;
*Philadelphia & T. R. Co. v. Hagan*, 47 Pa. St. 244;  *Conti-
nental Ins. Co. v. Stead*, 95 U. S. 161;  *Ernst v. H. R. R. Co.* 35
N. Y. 36.   It was not the duty of the plaintiff in this case
to stop his horses and go forward to see if a train was ap-
proaching.  *Dolan v. D. & H. C. Co.* 71 N. Y. 289;  *Bonnell
v. D., L. & W. R. Co.* 39 N. J. Law, 189;  *Kellogg v. N. Y.
C. & H. R. R. Co.* 79 N. Y. 72;  *Eilert v. G. B. & M. R.
Co.* 48 Wis. 606;  *Guggenheim v. L. S. & M. S. R. Co.* 33
N. W. Rep. (Mich.), 165.

For the respondent there was a brief by *John W. Cary*,
attorney, and *Burton Hanson*, of counsel, and oral argu-
ment by *Mr. J. T. Fish* and *Mr. Hanson.*   They cited, be-
sides cases cited in the opinion, *The Troy*, 28 Fed. Rep. 863;
*Rothe v. C., M. & St. P. R. Co.* 21 Wis. 256;  *Chase v. M.
C. R. Co.* 78 Me. 346.

LYON, J.   In the consideration of the present case it will
be assumed that there was sufficient evidence to send the
question of the negligence of the defendant company to

the jury.   The only question to be determined is, Does the uncontradicted evidence prove conclusively that the plaintiff was guilty of negligence which contributed directly to the injuries of which he complains?   The circuit judge was of the opinion that, under the peculiar circumstances of this case, it was the duty of the plaintiff to have stopped his team while he could do so, that he might the better hear the approach of the train.

It is undisputed that, for almost 150 feet before he reached the spur track, and until he had passed that track, where it was too late to avoid a collision with the train, the plaintiff could not see a train on the main track approaching from the north.   Driving as he was between two other teams, upon a plank road, the leading wagon and his own being heavily loaded, the conclusion is irresistible that there must have been sufficient noise in his immediate vicinity seriously to interfere with his hearing the train as it approached the crossing.   Besides, the wind blew from the south, which would be another obstacle to his hearing the train.   He was well acquainted with the crossing, and is chargeable with knowledge of all the circumstances of danger which surrounded him.   Moreover, the important fact is undisputed that he knew and remembered that the train was due and should pass the crossing just about the time he reached it.   The train was absolutely hidden from his view, and his vision was of no service whatever to him in detecting its presence.   So far as seeing the train is concerned, he might as well have been blind.   The only sense which could enable him to learn of the presence of the train was that of hearing, and because of the circumstances just mentioned, that was liable to be entirely insufficient for the purpose while his team was in motion.   Had he stopped his team as he approached the spur track, which he might easily have done, it is highly probable that he would have heard the train.   At any rate, a delay of a few seconds would

have avoided the collision and the injury. In view of these conditions, considering that the crossing was a very dangerous one at best, and that the peril was imminent because the train was then due there, of which fact the plaintiff was conscious at the time, is it not reasonable to hold that it was his duty to employ his hearing to the best advantage to discover the approach of the train? And to listen effectually, was it not necessary that he should stop his team?

Many adjudications by this and other courts, claimed to be in point on these questions, were cited by the respective counsel in their very able arguments. While such adjudications are valuable in determining the general principles of law on the subject of negligence, yet, inasmuch as no two cases are exactly parallel in their facts, they do not always, or often, furnish sufficient or safe guides for applying those principles correctly to the facts of any given case. Such application must necessarily be made in each case in the light of its own facts. Thus, for example, the rule of law is that the negligence of the plaintiff, or his want of ordinary care, which contributed proximately to the injury of which he complains, defeats an action predicated upon a charge of negligence against the defendant. But whether the plaintiff was guilty of such negligence must be determined from the facts of the particular case. Again, if the testimony relating to such negligence is conflicting or, not being conflicting, if the inferences to be drawn therefrom are doubtful or uncertain, the question of negligence is for the jury. But if the evidence is undisputed and the inferences therefrom plain and certain, the question is one of law for the court.

The cases cited on behalf of the defendant to show that plaintiff should have stopped his team and listened for the expected train, seem to us to come nearer this case in their facts than those cited to sustain the opposite view. Those cases on behalf of the defendant, or some of them, are here

cited, but will not be discussed. *Mantel v. C., M. & St. P. R. Co.* 33 Minn. 62; *Haas v. G. R. & I. R. Co.* 47 Mich. 401; *Griffin v. C., R. I. & P. R. Co.* 68 Iowa, 638; *Schaefert v. C., M. & St. P. R. Co.* 62 Iowa, 624; *Tucker v. Duncan,* 9 Fed. Rep. 867; *Connelly v. N. Y. C. & H. R. R. Co.* 88 N. Y. 346; *Wilds v. H. R. R. Co.* 24 N. Y. 430; *Merkle v. N. Y., L. E. & W. R. Co.* 9 Atl. Rep. (N. J.), 680; *N. P. R. Co. v. Holmes,* 14 Pac. Rep. (Wash. T.), 688; *Kennedy v. C. & N. W. R. Co.* 68 Iowa, 559. See, also, the late case of *Jepson v. C., M. & St. P. R. Co.* in United States circuit court of Minnesota (unreported).

The rule to be deduced from these cases is this: If the view of a traveler on the highway approaching a railroad crossing is so obstructed that he cannot see an approaching train in time to stop his team before colliding with it, if he knows that a train is due at such crossing at or about such time, and if he is unable to hear the approaching train when his team is in motion, whether by reason of the force and direction of the wind or of noises in the vicinity, whether made by his own wagon or by other causes, ordinary care requires him to stop his team while he may do so, and listen for the train.

Most of the cases cited by counsel for plaintiff to sustain the opposite view, seem to lack some of the conditions just specified. In some of them the view of the railroad track in the direction of the approaching train was not entirely cut off. In others the travelers did not know that a train was then due at the crossing. Because of these features it may well be held that the rule above stated is inapplicable to those cases.

Some decisions of this court which it is claimed relieve the plaintiff of the obligation to stop his team, require brief notice. These are *Duffy v. C. & N. W. R. Co.* 32 Wis. 269; *Urbanek v. C., M. & St. P. R. Co.* 47 Wis. 59; *Eilert v. G. B. & M. R. Co.* 48 Wis. 606.

AUGUST TERM, 1887.          223

Seefeld vs. The Chicago, Milwaukee & St. Paul R. Co.

In the first of these cases, as in this case, the plaintiff, a traveler on the highway, could not see the approaching train until too near the railroad track to avoid a collision. But, unlike the present case, there is no suggestion that he knew or had reason to believe that a train was about to pass or would probably pass the crossing at or about the time he attempted to do so. It was held not to be his duty to stop his team, leave his wagon, go upon the railroad track and look along the same for a train. In *Urbanek v. C., M. & St. P. R. Co.*, the question we are here considering was not made or considered. In the remaining case of *Eilert v. G. B. & M. R. Co.*, the jury found, presumably on sufficient proof, that had the plaintiff stopped within a reasonable distance of the crossing and listened, he could not have heard the rumbling of the train. If this finding is true, it would have been fruitless for the plaintiff in that case to have stopped his team. It is very obvious that neither of these cases conflict with the rule above stated, requiring the traveler under certain circumstances to stop and listen for an expected train before going upon the railroad track.

The material facts in the present case affecting the question of the alleged contributory negligence of the plaintiff are undisputed, and they admit of no doubtful or opposing inferences. Hence, whether or not those facts establish the negligence of the plaintiff is a question of law for the court. The inference which the circuit court deduced from the facts was that the plaintiff, by failing to stop his team so that he might listen for the expected train most effectually, failed to exercise that reasonable and proper care and caution to avoid injury which the law exacts of him as a condition precedent to his right to recover in this action. We are satisfied that this is the only inference which can properly be deduced from the facts proved.

We hold, therefore, both on principle and authority, that

because the plaintiff, when traveling on Bridge street towards the crossing, could not see a train approaching from the north until it was too late for him to avoid a collision therewith should it pass when he reached the crossing, because he did not hear the train, and there were noises near him and an unfavorable wind which necessarily interfered with his hearing it while his team was in motion, and because he knew that a train was due at the crossing at about the time that he reached there, and expected it would then pass the crossing, the law required him to place himself in a more favorable situation to hear by stopping his team and again listening for the expected train before going upon the railroad track. Failing in this, he is chargeable with negligence which contributed proximately to the injuries of which he complains, and cannot recover damages for such injuries. We conclude that the circuit judge properly directed the jury to return a verdict for the defendant.

*By the Court.*— Judgment affirmed.

TAYLOR, J., dissents.

See note to this case in 35 N. W. Rep. 278.—REP.