The Town of Waupun vs. The Town of Chester.

THE TOWN OF WAUPUN VS. THE TOWN OF CHESTER.

*October 18 — November 6, 1884.*

TOWNS: BRIDGES. *(1) Bridge on highway between towns: Repairs: Apportionment. (2) Refusal of one town to repair: Implied assumpsit.*

1. An agreement between two towns apportioning the expense of building and repairing a bridge on a highway between them, is *held* to have been lawful (under sec. 68, chap. 19, R. S. 1858), and to have been a continuing agreement relating to future repairs, although such bridge was wholly within that part of the highway which was, at the same time, assigned to one of said towns to be kept in repair.

2. If one of two towns which are jointly bound to keep a bridge in repair, refuses to join in making necessary repairs, the other town may make them and recover the proper proportion of the expense thereof from the town so refusing.

APPEAL from the Circuit Court for *Dodge* County.

Action to recover two fifths of the expense of repairing a bridge situated on the line of a highway between the plaintiff and defendant towns. The facts will sufficiently appear from the opinion. At the close of the plaintiff's testimony a motion for a nonsuit was granted, and from the judgment entered accordingly the plaintiff appealed.

For the appellant there was a brief by *Eli & C. E. Hooker*, attorneys, and *Thos. W. Spence*, of counsel, and oral argument by *Mr. Spence*.

For the respondent there was a brief by *J. B. Hays* and *H. W. Lander*, and oral argument by *Mr. Lander*.

ORTON, J.   In October, 1859, the town of *Waupun*, in the county of Fond du Lac, and the town of *Chester*, in the county of Dodge, by the joint action of their boards of supervisors, attempted to lay out what was called in the petitions and orders a "joint highway" on or near the line

between said towns. To that end their proceedings seem to have been substantially in compliance with the statute relating to the laying out of town line highways, and no particular objection is made thereto, except as to the name given to it in the records; but this highway became long since a legal highway by user and the statute of limitations. R. S. sec. 1924. Regarding substance, rather than mere name, this highway was no doubt intended to be and was, substantially, a highway between the two towns, according to secs. 67, 68, and 69 of ch. 19, R. S. 1858.

The highway was in many places widely variant from the town line, but must be presumed to have been laid out "as near thereto as the situation of the ground" admitted, and that the variation "was deemed necessary" according to the above statute. On this highway a bridge across the Rock river was necessary to be built and maintained, and if the highway was such, on the town line, as we hold it was, or a town line highway, then it follows that such bridge was a town line bridge, to be built and maintained jointly by the towns, the same as the highway. The language in sec. 1320, R. S. 1878, "or aiding in maintaining a bridge across such stream," and the section in which it occurs, were not then in force as statutory law. The provisions of said section, and subsequent sections relating to towns, cities, and villages bordering upon navigable or meandered streams, and building and maintaining bridges over the same, were first enacted as ch. 229, Laws of 1874. But the main body of that chapter relates to providing means by taxation and issuing bonds for the building and maintaining or aiding therein of such bridges. It does not in terms authorize towns to build and maintain jointly such bridges, or aid therein, but only for raising the necessary means for such purpose, implying that such right and duty existed without the statute. The statute only recognizes such right and duty, and provides the means for the same. A bridge across Rock

river, a navigable or a meandered stream on this highway, was necessary to the use of the highway, and a part of it, and it was as much the duty of the two towns to build and maintain it as any part of the highway. Such a bridge, however, involved an extraordinary expenditure of money. It could not be apportioned in sections like other parts of the highway. The right to build and maintain it by the towns *ex necessitate* being conceded, the right to apportion between the towns the expenses thereof is a like necessity, for in no other way could it be jointly built and maintained by the two towns. The towns were authorized to determine what part of said highway should be made and kept in repair by each town, by sec. 68, ch. 19, R. S. 1858.

It follows that they were also authorized to determine what *part* of such bridge should be made and kept in repair by each town. Such *part* of the bridge could not be determined in any other way than by an apportionment of the expense incurred in building and maintaining it. At the same time when the highway was laid out, the supervisors of the two towns determined, by an order or agreement, the part of the highway to be made and kept in repair by each town, and apportioned the expense of building and repairing the bridge between the two towns. Said order or agreement was as follows: " At a meeting of the supervisors of the towns of *Chester*, in Dodge county, and *Waupun*, in Fond du Lac county, it was agreed by the said supervisors that the expense of building and repairing the bridge known as the county line bridge be apportioned to each of the said towns as follows: to the town of *Waupun* three fifths, and the town of *Chester* two fifths, of said expense; and the road laid out bearing even date herewith be divided as follows to keep in repair: the town of *Waupun* to take the west part to the second angle post, where it angles from the road known as the Clark road; the town of *Chester* the balance after it angles from said road."

It is conceded that the bridge is in that section of the highway assigned to the town of *Waupun* to keep in repair. In respect to this agreement, it is contended by the learned counsel of the respondent that it is, at least, ambiguous, and should be construed that it is the duty of the town of *Waupun* to keep the bridge in repair, because it is a part of the highway assigned to that town. The agreement is remarkably clear and explicit, and leaves nothing in the least doubt as to its meaning. It could scarcely be better drawn to express the full and complete determination of the supervisors of the division of the highway, and of the apportionment of the expense of building and repairing the bridge. There is no possible chance of any other construction.

There had been a bridge at that point which had been destroyed, and so the bridge had to be built or rebuilt at considerable expense. To carry out this agreement, such expense for building the bridge was borne by the two towns according to the apportionment therein made. Several times since it has been repaired by the two towns according to such apportionment. Both towns in this way have practically construed the agreement just as its language so clearly expresses. At one time, the town of *Waupun* made the necessary repairs of the bridge, and presented to the town of *Chester* a bill for two fifths of the expense thereof, and said town allowed and paid it. The agreement was not only thus practically construed and ratified, but the town of *Chester* is thereby estopped from questioning the agreement, or denying its liability under it. *Kneeland v. Gilman*, 24 Wis. 39; *Houfe v. Fulton*, 34 Wis. 608; *Colby v. Beaver Dam*, id. 285. But we have seen that it was the right or duty of these two towns to do just what they did do as to this bridge. The bridge finally became again out of repair. The town of *Waupun* notified the town of *Chester* of it, and to unite in repairing it. The town of *Chester* refused. The town of *Waupun* thereupon made the necessary repairs, and paid for

them, and presented to *Chester* a bill for two fifths thereof, and *Chester* refused to pay it or allow it, and denied the obligation of the agreement, and its liability under it. The amount or justice of the bill was not questioned. Thereupon *Waupun* brought this action.

It is contended by the learned counsel of the respondent that the "repairing" mentioned in the agreement was only for the time being, or for the building and repairing of the old bridge, which had been destroyed when the agreement was made. Such a construction would fail to provide for maintaining the bridge in the future, and leave either one or both of said towns liable for not repairing it. The duty to keep the highway in repair is no more a continuing duty in this agreement than to repair the bridge. The question is too plain for discussion.

The only remaining question is the liability of the town of *Chester* in this action. There is no other remedy. *Mandamus* will not lie. *State ex rel. Winslow v. Supervisors*, 16 Wis. 613. The statute makes no provision for an appeal to the county board in such a case. There is abundant authority and reason for maintaining such an action. It was the clear legal duty of the town of *Chester* to have joined with the town of *Waupun* in repairing the bridge without delay as soon as notified of its condition. The refusal to do so left the town of *Waupun* no alternative but to make the repairs at once, in the interest of the public and to avoid liability, and to pay the expense for the joint benefit. If *Chester* exercised no judgment or discretion in the repairs necessary to be made and the cost thereof, it was the sole fault of *Chester*. That town left the whole matter to the judgment and discretion of *Waupun*, and it cannot now complain unless such judgment or discretion was abused or fraudulently exercised. The town of *Waupun* has paid two fifths of the expenses for repairing the bridge to the use and for the benefit of the town of *Chester*, and there is an implied

*assumpsit* by the town of *Chester* to pay the same to the town of *Waupun* on demand.

The principles upon which the appellant's cause of action depends were very recently recognized and established by this court in *President and Trustees of West Bend v. Mann*, 59 Wis. 69. In that case the owner of the land over which the highway passes cut a race-way across the road. It was held that it was his duty to bridge it over, and, at the same time it was the duty of the village to keep it bridged for the use and safety of the public. The owner, on notice, refused to discharge this duty, and the village caused the race-way to be bridged at considerable expense. The action was by the village to recover this expense, and it was held that there was a right of recovery; and it was also held that inasmuch as the highway had been opened and worked and used by the public as such before the race-way was dug, and the owner of the land had once bridged it over, all irregularities in laying out the highway had been cured by the statute of limitations. A similar implied liability was recognized in *Rockwood v. Woodford*, 25 Wis. 443, in *Depere v. Bellevue*, 31 Wis. 120, and in *Reed v. Jones*, 8 Wis. 421. See, also, other authorities cited in the able brief of the appellant's counsel, such as *Doane v. Badger*, 12 Mass. 65; *Mumford v. Brown*, 6 Cow. 475; *Stevens v. Thompson*, 17 N. H. 109; *Pennsylvania R. R. Co. v. Duquesne Borough*, 46 Pa. St. 223; *Pottsville Borough v. Norwegian Township*, 14 Pa. St. 543; and *Brookline v. Westminster*, 4 Vt. 224. These two last cases are very much in point. But the authorities to the same effect are too numerous to be cited. We think the plaintiff town showed a clear right to recover.

At the close of the plaintiff's evidence the circuit court granted a nonsuit in the case, and, as we think, erroneously.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.