THE STATE EX REL. THE TOWN OF BARABOO vs. THE BOARD OF SUPERVISORS OF SAUK COUNTY.

*January 10 — January 31, 1888.*

*(1) Constitutional law: Uniformity of taxation: Bridges. (2)* Mandamus *on relation of town: Authority must appear.*

1. Ch. 187, Laws of 1885,— providing that when a town has voted to construct or repair any bridge wholly or partly within its limits, if the cost of such bridge or repairs will exceed one fourth of one per cent. of all the taxable property of the town, and the town has provided for the payment of one half of such cost, the county board shall appropriate the other half thereof and cause the same to be levied upon the taxable property of the county, but that no tax therefor shall be levied upon the property of any incorporated city or village that maintains its own bridges,— does not violate sec. 1, art. VIII, Const., which requires that "the rule of taxation shall be uniform."

2. A writ of *mandamus,* issued upon the relation of a town, should be quashed unless it appears upon the face of the relation and the writ that the person or officer applying for the writ was directed by the electors of the town to make such application.

State ex rel. Town of Baraboo vs. The Board of Sup'rs of Sauk County.

Mandamus. Upon the affidavit of the chairman of the board of supervisors of the town of *Baraboo*, made on behalf of said town, an alternative writ of *mandamus* issued out of this court, directed to the *Board of Supervisors of Sauk County*, commanding said board to appropriate the sum of $2,500 (that being one half of the cost of the construction of a certain bridge over the Baraboo river in said town of *Baraboo*), and cause said sum to be levied upon the taxable property of said county, exclusive of the property in all incorporated cities and villages in said county that maintain their own bridges, and to designate two of its members to act as commissioners to co-operate with the supervisors of the town of *Baraboô*, to have charge and authority to act in the letting, inspection, and acceptance of the work of said bridge; or to show cause to the contrary, etc.

The respondent moved to quash the alternative writ for the reason that the affidavit of the petitioner shows no authority from the relator, the town of *Baraboo*, directing or authorizing him to make application for said writ in the name of the town; and for the further reason that ch. 187, Laws of 1885, to enforce the provisions of which act this action is brought, is unconstitutional and void.

For the respondent there was a brief by *R. D. Evans*, and oral argument by *Mr. Evans* and *Mr. I. C. Sloan*. The affidavit of the petitioner for the writ shows no authority. The suing out of a writ of *mandamus* is the commencement of an action. A suit should be instituted by a town as relator only upon the order of the electors made at a town meeting. Where no authority is shown the writ should be quashed. *State ex rel. G. B. & M. R. Co. v. Jennings*, 56 Wis. 113; *State ex rel. Manitowoc v. County Clerk*, 59 id. 16; *People ex rel. Sanders v. Colborne*, 20 How. 378; *People ex rel. Lumley v. Lewis*, 28 id. 172; R. S. sec. 776, subd. 2. Ch. 187, Laws of 1885, violates sec. 1, art. VIII,

of the constitution. *Weeks v. Milwaukee*, 10 Wis. 200; *Knowlton v. Rock Co.* 9 id. 410; *Loftin v. Citizens' Nat. Bank*, 85 Ind. 346; *La Fayette, M. & B. R. Co. v. Geiger*, 34 id. 185; *East Portland v. Multnomah Co.* 6 Oreg. 62; *Pine Grove v. Talcott*, 19 Wall. 666; *Exchange Bank v. Hines*, 3 Ohio St. 1, 15; Cooley on Taxation, 105, 178; *Hammett v. Philadelphia*, 65 Pa. St. 146, 151; *Lexington v. McQuillan's Heirs*, 9 Dana, 513; *Hale v. Kenosha*, 29 Wis. 605; Cooley's Const. Lim. 614, 637; *Dyar v. Farmington Vil. Corp.* 70 Me. 515.

*J. E. Wright* and *John Barker*, for the relator. [No brief on file.]

COLE, C. J. The important question raised by the motion to quash the alternative writ is as to the constitutionality of ch. 187, Laws of 1885. That act, in substance, provides that whenever the town board of supervisors of any town shall file a petition with the county board of supervisors of the county in which the town is situated, setting forth that the town has voted to construct or repair any bridge wholly or partly within such town, designating, as near as may be, the location of the bridge, and further stating that the town has provided for the payment of one half of such construction or repair, and that the cost of the bridge or repairs exceeds one fourth of one per cent. of all the taxable property of the town according to the last equalized valuation, the county board shall appropriate the other half of the cost, and cause such sum to be levied upon the taxable property of the county as will, with the amount provided by the town, be sufficient to defray the expense of erecting and repairing the bridge so petitioned for. The act contains the proviso that nothing therein contained shall in any manner authorize the levy of any tax upon the property of any incorporated city or village that maintains its own bridges, and as to any such city or village

the act shall not apply. The validity of the act is challenged because of this proviso.

The argument in support of the view that the proviso renders the law invalid, in brief, is this: The constitution requires that "the rule of taxation shall be uniform" (sec. 1, art. VIII), and the tax levied by the county for the purpose indicated is a county tax, and must be levied upon all the taxable property within the limits of the county; that the constitution requires a uniform and equal rate throughout the locality in which the particular tax is levied, but the proviso excludes property within incorporated cities and villages from this levy. This argument appears to us more specious than sound. It has been the policy of the state, since its organization, to impose upon towns, cities, and incorporated villages, the burden of building and of keeping in repair the bridges and highways within their respective limits. The law enacted to carry out that policy has operated, and will operate, with more or less hardship, especially upon some towns which are unreasonably burdened by it. Our experience tells us that towns having a sparse population, whose territory is traversed by a large river or stream, cannot well erect and keep in repair at their own expense such bridges as are necessary for the public convenience. The law in question was intended to meet such cases and equalize, to some extent, the public burden. The county, therefore, is required to aid towns in the erection and repair of bridges when the expense exceeds a certain limit. Incorporated cities and villages which ordinarily have to maintain a greater number and more expensive bridges than towns, are exempted from contributing to this county aid, doubtless in consideration of the fact that they maintain their own bridges; and it strikes one that it would be manifestly unjust and unequal to impose upon these municipalities the entire expense of erecting and maintaining their own bridges, and then require them to aid in

erecting those outside their limits. True, it is said that property outside of such cities and villages, situated in towns which maintain their own bridges, is taxed for its share of this county aid. That is certainly so; but that only furnishes another illustration of the fact that no tax law has ever been enacted, or probably ever will be, which is exactly just and equal in its operation. The general law which requires each town, as a rule, to keep in repair its own bridges, does not secure equality of public burden. Some towns have unavoidably to build more bridges than others. The territory of some towns is traversed by large streams, while that of other towns has but a few small streams within its limits. So, it is apparent that the rule that each town shall maintain its bridges, where the cost does not exceed a given sum, fails to secure an equality of public burdens, though it goes upon a uniform principle, applicable to the whole state. But the burden of the bridge tax, under the general law, is inevitably far greater upon the property of one town than that of another. Highways and bridges are matters of general concern to the people of the whole state; yet the expense of making them, and of keeping them in repair, is generally thrown upon the localities where they are situated. Perhaps this is as fair a rule for apportioning the burden as could be devised; still it oftentimes results in making the property in one taxing district contribute more to the same public purpose than the property in another district. But the principle of the highway law is uniform, and applies to all the subordinate political divisions of the state. The constitution should not be so construed as to prevent the legislature from distributing an exceptional burden over a larger taxing district unless such construction is absolutely demanded by its language.

The law in question is equitable and just, and we are disposed to affirm its validity. It may happen that under its operation some towns will contribute twice the same sea-

son to the bridge tax, but that evil will be far less than to make the property of one town bear a burden greater than equality and justice require. Judge Cooley, in treating this subject, makes these remarks: "There is special need for the state possessing and sometimes exercising a compulsory authority in these cases, springing from the fact that expenditures necessary for making satisfactory thoroughfares are likely in some localities to be so great that it would not be just that the local public should bear the whole. In such cases it has been seen that it is customary to create overlying taxing districts to meet the expense; and in the case of bridges, in particular, while the towns or even the road-districts are required in general to make them, it is customary to compel the counties to assist wherever the expense is exceptionally heavy, and perhaps to take upon itself the whole cost of any considerable structure." Cooley on Taxation (2d ed.), 683.

The counsel for the relator calls our attention to a law enacted in 1861 in regard to the office of county superintendent, which goes upon the same principle as the law we have been considering. That enactment excepts cities having boards of education from its provisions, and exempts the property of such cities from any tax levied for the salary of the county superintendent. Ch. 179, Laws of 1861. The substance of this law is incorporated in sec. 703, R. S.

But it is insisted that the motion to quash should prevail, because neither the relation nor the writ shows that the relator had authority from the town to commence this proceeding. This objection is well taken. In *State ex rel. Manitowoc v. County Clerk*, 59 Wis. 16, it was held that such a writ ought not to have been allowed upon the relation of the town, unless the person or officer applying for the same was directed by the electors of the town to make such application. This fact, we think, should appear upon the

State ex rel. Town of Woodland vs. The Board of Sup'rs of Sauk County.

face of the relation and writ. The counsel for the relator says that, as the application for the writ purports to be made in behalf of the town, we must presume, on this motion, that the relator was authorized and directed by the electors of the town at a town meeting to make it. We cannot make such a presumption, because the authority should appear upon the face of the relation and writ, and not rest in inference. This is a fatal defect in the writ.

The motion to quash must be granted, but with leave to the relator to supply by amendment the necessary statement in the relation and writ. A reasonable time will be allowed to make this necessary amendment.

*By the Court.*— Ordered accordingly.

