BATTLES, County Treasurer, Respondent, vs. DOLL, Village
Treasurer, and others, Appellants.

*January 30—February 18, 1902.*

*Constitutional law: Taxation: Uniformity: Exemption: Bridges: Vil-
lages: Officers: Sureties.*

1. Sec. 1319, Stats. 1898, authorizes the raising of taxes by counties
   to aid towns in the building of bridges, but provides that the
   act shall not authorize the levying of any tax on the property
   of any city or incorporated village "that maintains its own
   bridges." Sec. 1, art. VIII, Const., declares that the rule of
   taxation shall be uniform. *Held*, that such exemption from
   taxation applies to such cities and villages as are required by
   law to maintain their own bridges, whether they in fact main-
   tain any or not, and so construed the statute is not unconstitu-
   tional as creating an unreasonable and artificial classification.
2. The provisions of ch. 40, Stats. 1898, governing incorporated vil-
   lages, taken in connection with sec. 1339 (giving to the person
   injured a right of action for any injury happening by reason of

the insufficiency or want of repair of any bridge, etc., in any town, city or village), imposes upon villages, unless acting under a special charter which does not impose the burden, the duty of building and keeping up the bridges within their limits.

3. A village incorporated under the general law, with the power and obligations imposed by ch. 40, Stats. 1898, is not liable to taxation in aid of building bridges, under sec. 1319.

4. Where a village treasurer, in obedience to his warrant therefor, collects taxes, and the same warrant requires him to pay over the money collected to a certain officer, his plain duty is to obey the commands of his warrant, and in so doing he and his sureties are amply protected.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Affirmed in part, reversed in part.*

The plaintiff is county treasurer of Sauk county. Prairie du Sac is a regularly incorporated village in said county, and has no bridges within its corporate limits. The defendant *Doll* is the village treasurer, and the other defendants are his sureties. At its annual meeting in 1900 the county board of Sauk county raised the sum of $4,000 to assist certain towns in building bridges pursuant to the provisions of sec. 1319, Stats. 1898. A portion of said bridge tax was levied upon the taxable property of said village, amounting to $155. *Doll,* as village treasurer, collected said sum, but refused to pay it over to the county treasurer, as required by his warrant, by direction of the village board. The plaintiff brings this action to recover said sum against the treasurer and his bondsmen. On the trial the facts were stipulated, and the following questions were submitted to the trial judge:

"First. Did the county board have any authority, under said section 1319, to levy the bridge tax in question against said village? Second. Does the defendant *Doll,* as village treasurer, have the right to withhold said sum from the county treasurer? Third. In case both the above points be decided in favor of either party, the winning party shall be

entitled to judgment. Fourth. In case the second point be decided in the negative, plaintiff shall be entitled to judgment for costs."

The court decided the first question in the affirmative and second in the negative, and gave judgment for plaintiff. The defendants appeal.

For the appellants there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

For the respondent there was a brief by *James L. Bonham,* district attorney, and *Jones & Stevens,* of counsel, and oral argument by *Mr. B. W. Jones.*

BARDEEN, J. The village of Prairie du Sac was incorporated under the general law of the state in 1885. It had the powers and assumed the obligations granted and imposed by ch. 40 of the General Statutes. In 1900 the county board of Sauk county voted to raise a sum of money by taxation to aid certain towns in the building of bridges, as provided for in sec. 1319, Stats. 1898. This section requires the sum so raised to be levied upon the taxable property of the county, and then says:

"Provided, that nothing herein contained shall authorize the levy of any tax upon the property of any city or incorporated village *that maintains its own bridges,* and as to any such city or village this section shall not apply."

Under the resolution of the county board a tax amounting to $155 was levied upon the taxable property of the village of Prairie du Sac upon the theory that it did not have any bridges to maintain.

By stipulation of the parties two questions are presented for consideration and decision: First. Did the county board have authority, under sec. 1319, to levy the bridge tax in question upon the taxable property of the village? Second. Has the defendant *Doll,* as village treasurer, the right to withhold the tax he has collected, from the county treasurer?

The first question involves the proper construction to be given to that portion of sec. 1319 which says that nothing therein contained shall authorize a levy of the tax upon the property of any incorporated village "that maintains its own bridges." The validity of sec. 1319 came up for consideration and was first questioned in *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, on the ground that it violated the provisions of sec. 1, art. VIII, of the constitution, that "the rule of taxation shall be uniform." After most careful consideration, this court upheld the act, and the position there taken has been reaffirmed in several subsequent cases. *State ex rel. Woodland v. Sauk Co.* 70 Wis. 491; *State ex rel. Rochester v. Racine Co.* 70 Wis. 543; *State ex rel. Spring Lake v. Pierce Co.* 71 Wis. 321. The ground upon which these decisions are based is that it has been the policy of the state since its organization to impose upon towns, cities, and incorporated villages the burden of building and keeping in repair the bridges and highways within their respective limits. This policy operates with more or less hardship. Towns sparsely settled, whose territory is traversed by many streams or a large river, are sometimes overburdened. The law in question was intended to meet such cases, and equalize, to some extent, the public burden. Cities and villages, which ordinarily have to maintain a great number and more expensive bridges than towns, were exempted from contributing to county aid, in consideration of the fact that they had to maintain their own bridges, and that it would be unjust to require them to do so and also require them to aid in erecting those outside their limits. For these reasons it was held that the constitutional provision referred to should not be so considered as to prevent a proper equalization of exceptional tax burdens by distributing them over a larger taxing district, or to prevent the exemption of cities and villages, charged by law with the duty of maintaining their own buildings, from the burdens thus imposed. The

exemption thus made becomes more significant when we consider that the right to apply to the county for aid under sec. 1319 only applies to towns which are compelled to build bridges the cost of which shall exceed the limit mentioned, and does not apply to cities or incorporated villages. This exemption has a just and equitable basis to rest upon, and will be sustained, unless the class of cities and villages to which it is made to apply is such as cannot be justified under a proper construction of the constitution. From the very nature of things, any classification made must, to a greater or less extent, be arbitrary. The grounds upon which such classification must rest were stated in *Johnson v. Milwaukee,* 88 Wis. 383; and reaffirmed in *Boyd v. Milwaukee,* 92 Wis. 456; and *Adams v. Beloit,* 105 Wis. 363. We need not repeat what was said in those cases. The general doctrine is that the classification must be appropriate, and not artificial. It must rest upon substantial distinctions, be germane to the purpose of the law, must not preclude additions to the class, and must apply equally to each member thereof. It is not to be denied that the legislature was unfortunate in the wording of the statute under consideration. The plaintiff seeks to justify the imposition of the tax in question on the ground that the exemption only applies to such villages as in fact have bridges within their limits, which they maintain. We see at once that such a classification is adventitious and artificial, depending upon the circumstance of whether it has a stream or gully within its limits which requires a bridge. It is based entirely upon existing circumstances, and nothing short of an earthquake will permit additions to it. It singles out a few villages, which, by the mere circumstance of location or absence of streams within their limits, are carried outside of the general class, and are made to assume burdens because of that fact. By the construction contended for, the law, instead of operating upon a class generally, would be made to apply only to some members of a class. It

would be refining the rule to a shadow to say that the mere
circumstance of a village having or not having a stream or
gully within its limits is a sufficient basis for a classification.
We cannot believe that this was the legislative intent. A
more reasonable construction, and one not out of harmony
with constitutional requirements, is that the exemption ap-
plies to such cities and villages as are required by law to
maintain their own bridges. Under such a construction the
law can be sustained within the rule of the cases hereinbefore
mentioned. If the village of Prairie du Sac comes within
the class last mentioned, the tax in question was unlawfully
imposed, and it makes no difference whether it had bridges to
maintain or not. Its exemption from the tax simply depends
upon the fact of whether, if it had bridges, it would, under
the law, be required to maintain them. The statutes do not,
in express terms, say that a village shall build and maintain
its bridges, but a reading of ch. 40 in connection with sec.
1339 leaves little doubt where the obligation lies. By sec.
893, subd. 11, power is given the village board to lay out,
open, change, widen, or extend roads and streets, and to build
and repair any bridges thereon. By sec. 895 it is given the
power of condemnation. Sec. 905 authorizes the village au-
thorities to pave or improve streets. Sec. 911 imposes a poll
tax, and sec. 912 requires such tax to be expended on the
streets and sidewalks. Sec. 914a directs the raising of an
annual highway tax, to be expended under the direction of the
village board "in the improvement of the *streets, highways,
and bridges* in said village." Finally, sec. 1339 says that
if any damage shall happen to any person, etc., by reason of
the insufficiency or want of repair of any bridge or road in
"any town, city, or village," the person so injured shall have
a right of action for such injury. These several provisions
seem quite clearly to thrust the obligation of building and of
keeping up the bridges within their limits upon villages gen-
erally, although there may be those acting under special char-

ters who do not have to carry the burden. We therefore reach the conclusion that the village of Prairie du Sac is not liable to taxation in aid of building bridges, under sec. 1319.

The second question requires but little attention. In obedience to his warrant, the defendant *Doll* has collected the tax in question from the inhabitants of the village. That same warrant required him to pay the same over to the county treasurer. His plain duty was to obey its commands. It was ample protection for him and his sureties. The village board had no power or authority to divert the sums collected by him to purposes or channels other than as designated in the tax warrant. The language of the opinion in *Stahl v. O'Malley,* 39 Wis. 328, is directly applicable to defendants' situation, and denies the right of the treasurer to withhold payment of the money collected from the county treasurer. We confirm the rule there stated as being wise and salutary. To permit the collecting officer to sit in judgment upon the legality of the tax collected by him would result in intolerable evil. As a ministerial officer, it was his duty to yield absolute submission to the mandate of his warrant, and allow the tribunals appointed by law to decide as to the validity of the tax he was called upon to collect. This view would naturally result in an affirmance of the judgment, but under the stipulation of the parties that, if the second question be answered in the negative, the plaintiff should only be entitled to a judgment for costs, the judgment as to damages is reversed, and as to costs is affirmed. Costs in this court will be taxed for appellants.

*By the Court.*—So ordered.