VILLAGE OF BLOOMER, Respondent, vs. TOWN OF BLOOMER, Appellant.

*April 17—May 8, 1906.*

*Bridges: Joint maintenance by town and village: Neglect of one: Remedy: Notice: Constitutional law: Uniformity in rule of taxation: Classification of municipalities: Implied power to execute laws: Uniformity in town government: Local self-government: Bridge in village may be partly a town bridge: "Navigable stream:" State as party to internal improvement.*

1. Where two municipal corporations are jointly charged with the maintenance of a bridge, and one unreasonably neglects or refuses to perform in that regard, the other may carry the entire burden for the time being and subsequently recover of the former, on implied promise, its just share of the expense.

2. In case of the existence of a liability such as is indicated in the foregoing rule, the proper remedy is an action at law, not *mandamus.*

3. In case of two municipalities being jointly liable for the maintenance of a bridge and one unreasonably neglecting or refusing to participate in the necessary work in that regard, that one will be precluded thereby from escaping liability for its *pro rata* share of the expense upon the ground of its not being notified of the precise act giving rise to such expense, and given opportunity to participate in determining upon and doing that particular thing.

4. The legislature acting reasonably may impose upon a municipality
or collection of municipalities the duty, in part, of maintaining
a bridge not located within its or their boundaries.

5. The basis of the rule that classification for the purposes of gen-
eral legislation cannot be based upon existing circumstances
only, is that legislation of that sort must necessarily appertain
to unchangeable conditions. It has no reference to legislation
so applying to present and future conditions as well that the
members of the class may be increased or diminished.

6. The rules as to legitimate classification for general legislation
are:

    (a) The classification must be based on substantial distinc-
tions making one class really different from another.

    (b) The classification must be germane to the purposes of the
law.

    (c) The classification must not be based on existing circum-
stances only.

    (d) The law must apply equally to members of the class.

    (e) The character of the class must be so different from other
situations as to reasonably suggest necessity or propriety, hav-
ing regard for the public good, of substantially different legisla-
tive treatment therefor from that required for such others.

7. The fact that a legislative enactment does not provide in all de-
tails for its execution does not necessarily render it void. When
the law imposes a duty and fails to provide, specifically, for the
manner of performance, and the act to be done is of an ordinary
character readily performable by the use of the ordinary instru-
mentalities of the corporation, by necessary implication power
to so perform springs from the imposition of the duty itself.

8. A bridge across a navigable river, on a town road, so intersected
by a village plat as to include such bridge within the corporate
limits of the village, may be properly made, by law, in part a
town bridge.

9. The maintenance of a bridge across a large stream requiring a
larger expenditure than could be justly imposed upon a munici-
pality in which it is located, is not a purely local affair of the
town or village in which it is located. To require other munici-
palities to assist in maintaining it does not violate the princi-
ples of local self-government.

10. The words *navigable stream* ordinarily mean a stream navigable
in fact, one of sufficient capacity to permit of saw logs being
floated down the same in times of high water and of small row-
boats being used thereon to some extent, and such meaning must
be attributed to such words when they are used in a legislative

enactment, in the absence of ambiguity suggesting, reasonably, that a different meaning might have been intended which is discoverable by judicial construction.

11. The maintenance of a bridge in one municipality in part at the expense of another under the supervision of the executive officers of the two and in pursuance of a duty imposed by law does not violate the constitutional inhibition as regards the state engaging in works of internal improvement.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action to recover on a claimed statutory liability.

The complaint is to this effect: Plaintiff, during the occurrences giving rise to its claim, was a village corporation, located within the boundary of the defendant, a duly organized town. A highway which existed in the latter before the creation of the former is in part included within the platted corporate limits of the village, where it is cut by a navigable stream over which since before the village was organized there has been maintained a bridge. In 1903 it became necessary to repair the same temporarily, and later to construct a new one. Upon such necessity appearing, notice was given by plaintiff to the defendant to meet the former to consider in respect to the matter, a time therefor being named. The village board convened pursuant thereto, but the town was not represented. It claimed exemption from liability to aid in maintaining the bridge. Subsequently, plaintiff decided to build a new bridge, and in due course did so, incurring an expense of $2,979. The part thereof chargeable to defendant, dividing the same between the two corporations according to the last prior county equalization of property for taxation, within their respective boundaries, is $2,022.74. March 15, 1904, plaintiff presented a claim therefor to the defendant for allowance. It was disallowed by the town board of audit, and its action was thereafter, at the town meeting in April, 1904, ratified. The commencement of this action was duly author-

ized by the village board, and it was begun more than ten days subsequent to such occurrences.

The defendant answered, denying that Duncan's creek, the stream in question, is navigable, or that defendant was notified, at any time prior to the building of the bridge, that a new structure was necessary, or of plaintiff's intention in that regard, and alleging that the notice given to the town, mentioned in the complaint, was to the effect that a meeting would be held to consider the subject of repairing the bridge; that subsequently it was repaired, and defendant paid the proportion of the expense thereof plaintiff claimed from it, but without admitting legal liability in that regard; that subsequently, without any notice to the defendant of any necessity therefor, or of such intention, plaintiff caused the new bridge to be constructed.

The evidence, so far as necessary to be considered, will be stated in the opinion.

The cause was tried by the court. There were findings in plaintiff's favor as to all conditions precedent to the maintenance of the action in case of the town being liable under any circumstances. There were also findings to this effect: Duncan's creek is a navigable stream, in that it is floatable for saw logs in its natural state, some portions of the year. There is a town highway through the platted portion of the village, which is crossed by said creek, that being spanned by the bridge in question. May 16, 1903, plaintiff's clerk, by order of its board, mailed to defendant's clerk and each member of its board a notice to the effect that such bridge needed immediate repairs, and a meeting would be held May 26th thereafter, to decide upon the matter. In reply, the village board was informed that the town would not participate in making the repairs. Nevertheless, the former considered the matter, in accordance with the notice, but postponed action as to building a new bridge till July 25, 1903, at which time a favorable conclusion was reached. That conclusion was carried out at

an expense of $2,978. In the time intervening between the noticed meeting and the making of the contract for a new bridge, temporary repairs upon the old one were made. There-after plaintiff made a claim against the defendant for part of the cost thereof, which it paid, denying, however, legal liability in the matter. The proper proportion of the cost of the new bridge, to be borne by the defendant according to a division of the entire expense between the two corporations, on the basis of their last previous county equalization of property for taxation, is $2,022.74. This action was not commenced till the expiration of ten days thereafter.

On such facts the court decided, as matter of law, that the defendant's denial of all liability for the maintenance of the bridge, and refusal to participate in any proceedings in respect thereto, waived notice of the action of the village in regard to the matter, and that it was liable to the latter for $2,022.74, with interest and costs.

Judgment was rendered accordingly.

For the appellant there were briefs by *T. J. Connor*, attorney, and oral argument by *H. B. Walmsley*. They contended, *inter alia*, that money cannot constitutionally be taken by taxation from one municipality and expended on works located in another separate and independent municipality, as is attempted here. For, as the work is carried on by officers not chosen by the taxpayers who make the forced contribution, these officers are, as to them, agents of the state, *i. e.* getting their powers from the state, not from such taxpayers, and therefore the work is, so far, a state work of internal improvement. Const. art. VII, sec. 10; *People ex rel. Hubbard v. Township Board*, 25 Mich. 153; *Meyer v. Thatcher* (Ill.) 8 N. E. 824; *People ex rel. Seipp v. C. & N. W. R. Co.* 118 Ill. 520.

For the respondent there was a brief by *W. M. Bowe* and *Henry Lebeis, Jr.*, and oral argument by *Mr. Bowe*.

MARSHALL, J. The law under which, in the circumstances stated, it is claimed the liability adjudged in the trial court accrued, is ch. 284, Laws of 1899. The material part thereof is as follows:

"Every village in this state . . . shall constitute a separate road district. No part of the streets or highway . . . shall be in any road district established by the town board, nor under the control of the town officers, provided that bridges across navigable streams on town roads shall be built, maintained and repaired by the town and village jointly, the expense to be borne by each in proportion to their equalized valuation as is fixed by the county board. Provided that nothing in this section shall be construed as applying to bridges on public highways outside the platted portion of any incorporated village."

It is conceded that if appellant is liable to respondent at all on account of the construction of the bridge in question, the measure thereof was properly determined; but it is contended that if the law is valid and such bridge is within the class mentioned therein no liability accrued to respondent, because the law provides for joint control in the building and maintenance of such a bridge; that the town could not be put in default without a reasonable necessity for a new bridge, it having been given opportunity to participate in considering the question of its construction and incurring the expense, and refused to take part in the matter. That is conceded, as we understand it. The trial court so viewed the case, but decided that appellant's attitude had been such as to preclude it from escaping the liability on that ground.

On the question of waiver by appellant, it seems, the decision of the trial court was right. The town board was formally notified that the old bridge needed immediate repairs, and of a time and place when a meeting would be held to decide upon the question in respect thereto. The reply made that the town had decided not to take any part in the matter, ratified, as it was, at the town meeting in the spring of 1904,

Bloomer v. Bloomer, 128 Wis. 297.

was a plain repudiation of all liability for the maintenance of the bridge. It does not seem to be material that the notice given to the town board referred to repairs, not to construction of a new bridge, in view of determination of the town not to recognize any liability whatever in respect to the matter. Moreover, as the record shows, before the bridge was accepted a joint meeting of the village board and the town board was held for the purpose of such acceptance, the latter participated in the examination of the bridge for such purpose, and thereafter was present when the formal proceedings of acceptance were had but did not take any part therein either affirmatively or negatively. So it is clearly seen that, regardless of opportunity therefor, the town would not have taken any more active part in the matter than it did. It challenged the position of respondent as to its liability, and went just as far in participating as it could safely without, in the judgment of the board, jeopardizing its position. The only way the bridge could have been constructed under the circumstances, and it seems to be conceded that a new structure was necessary, was for the village to proceed as it did, taking its chances as to obtaining judicial vindication of its claim. In that view *Waupun v. Chester,* 61 Wis. 401, 21 N. W. 251, rules the case in favor of respondent. The principle governing the matter was there phrased substantially as follows:

"If one of two towns which are jointly bound to keep a bridge in repair refuses to join in making necessary repairs, the other town may make them and recover the proper proportion of the expense thereof from the town so refusing."

The foregoing is but an application to particular facts of the broader rule that where one person owes a clear duty to another in respect to the performance of some service requiring pecuniary outlay, and unreasonably refuses to perform that service, such other may himself perform it or cause the same to be performed and hold such person liable upon im-

plied promise to pay the reasonable expense incurred in re-
spect thereto.   The following are a few of the many illustra-
tions existing of the application of such rule : *Reed v. Jones,*
8 Wis. 392; *West Bend v. Mann,* 59 Wis. 69, 17 N. W. 972;
*Pa. R. Co. v. Duquesne,* 46 Pa. St. 223 ; *Centerville v. Woods,*
57 Ind. 192; *Doane v. Badger,* 12 Mass. 65; *Campbell v.
Hand,* 49 Pa. St. 234; 4 Kent, Comm. 371; 7 Am. & Eng.
Ency. of Law (2d ed.) 326, and cases cited.

The law in question is challenged as unconstitutional in
that the placing of villages having bridges on town roads with-
in the platted portions of their boundaries and towns in which
such villages are located in a class by themselves, for the
maintenance of such bridges, is not legitimate classification
and so violates the constitutional command as to uniformity
of taxation.   On this *Battles v. Doll,* 113 Wis. 357, 89 N. W.
187, is referred to as quite conclusive.

It was held in the case cited that classification for the pur-
pose of exempting property of villages from general taxation,
for a specific object, in counties of which such villages form
a part, the exemption having reference to whether such vil-
lages have within their corporate limits bridges which they
maintain, is not legitimate.   Here the question is whether the
classification of towns having villages situated therein, for
the joint maintenance of bridges across navigable rivers in
the platted portions of such villages, is legitimate.   We are
unable to see that the case, as to its facts or principles, falls
necessarily within the discussion in the *Battles Case* as to
classification by reference to physical conditions.   It seems
to rather fall clearly within the principle laid down in *State
ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 36 N. W. 398;
*State ex rel. Star Prairie v. St. Croix Co.* 83 Wis. 340, 53
N. W. 698, and the like, to the effect that in case of need of
a bridge requiring exceptionally heavy expenditure for its
maintenance, it is legitimate for the legislature to impose the

burden thereof, in part, on territory of a municipality or municipalities other than that in which the bridge is located.

The court, in the first case cited, which has since been followed, quoted approvingly and based its decision on the doctrine, deduced from authority, found in Cooley, Taxation (2d ed.) at page 683, to this effect: There is special need of legislative authority, in special situations springing from the fact that the burden for an object not purely local, like the maintenance of an expensive bridge on an important thoroughfare running through the country, would be too great to be justly imposed upon the particular municipality within which it is located, to lay such burden in part upon outlying districts. The legislature possesses such power, and the manner of its exercise is a matter of legislative discretion. The law relating to county aid to towns for bridge purposes has been often approved. In that each county is made a taxing district, excepting only such portions as are included within the limits of villages, which maintain their own bridges. The law here makes every town a taxing district in common with the village situated within its boundaries, as to the maintenance of a bridge across a navigable stream on a town road in the platted portion of the village. We are unable to see any distinction between the two laws in principle.

The particular feature of the law which is supposed to locate it outside of the rule as to legitimate classification, is that it is based, in part, on physical conditions which cannot be changed. True, that was spoken of in *Battles v. Doll* as not a proper basis for classification because, as it was said, no room is left for additions to the class.

It seems the doctrine that legitimate classification cannot be based upon existing circumstances only, precluding any change in the membership of the class, first found declared here in *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270, and subsequently many times followed, was wrongly applied

in *Battles v. Doll.* The decision was not based on such application. So the want of appreciation of the logical basis of the doctrine aforesaid evinced by the discussion was overlooked. Such doctrine as to such cases applies only to legislation directed solely to existing localities characterized presently by the special circumstances supposed to warrant the special treatment: legislation which necessarily contemplates a class presently determinable as to membership, and unchangeable in that regard in the future. The real ground of the rule was stated in *Wagner v. Milwaukee Co.* 112 Wis. 601, 607, 88 N. W. 577, quoting with approval from Binney's work on the subject (p. 78), thus:

"If the membership of a class be unchangeable then the law applies only to the individual members and can never apply to others. Such a law is clearly special."

Mr. Binney gives this illustration for the better understanding of the matter:

"If Cincinnati be the only city in Ohio that has or ever can have a population of 200,000 by the census of 1870, or Columbus the only city of the second class with a population of over 31,000 by the same census, or Akron the only city of the third class with a population of 12,512 at the census of 1880, then a law passed for all cities to which these circumstances only apply, is passed for Cincinnati, or Columbus, or Akron, just as exclusively as if they were specially mentioned."

We have just as good an illustration, perhaps, in *Burnham v. Milwaukee,* 98 Wis. 128, 73 N. W. 1018. The legislation was in form for cities of the first class, empowering them in respect to a particular matter, the power to be exercised only during the year 1897. The law was declared unconstitutional because the city of Milwaukee was the only city of the first class existing at the time of its passage, or which could in any reasonable probability exist during the time of its contemplated operation.

So it will be seen that a law having no prospective opera-

tion, a law dealing with existing or past conditions, is quite unlike the one in question. If the law here only related to such cases of a village corporation within the boundaries of a town having a bridge within the platted portion thereof across a navigable stream as existed at the time of its passage, then it would fall under the condemnation of the rule counsel so confidently invokes. Manifestly it is not such a law. It applies to existing and future conditions as well. In case of the formation of a new village having such a bridge, or of extension of the platted portion of an existing village so as to include such a bridge, or the construction of such a bridge in the platted portion of a village existing at the time of the enactment where none existed theretofore, and in other situations that might be mentioned, the law would apply.

Enough has been said to show clearly, it is thought, that the rule as to classification with reference to existing circumstances only has no reference whatever to legislation with reference to physical conditions in whole or in part that cannot be changed, but which at some points require municipal expenditure today and at others not, and those which do may be added to from time to time and diminished from time to time, according as circumstances change. The classification here seems to satisfy every essential laid down in the books. It is based on substantial distinctions making one class really different from another. It is germane to the purpose of the law. It is not based on existing circumstances only. The law applies equally to the members of the class. The character of the class is so far different from other situations as, within the boundaries of reason at least, to suggest necessity or propriety, having regard to the public good, of substantially different legislative treatment. *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954. The idea is that bridges exist in villages and are liable to increase in number over streams of such size as to require a greater expenditure of money in their construction and maintenance than would

be justly chargeable to the villages alone, since such bridges are substantially parts of town highways and are important to the latter second only to the villages, if second at all.

The further point is made that the law is fatally defective because the legislature omitted providing details for carrying it out. Our attention is called to the fact that by sec. 1318, Stats. 1898, the supervisors of a town are empowered only to levy a bridge tax of $300, and to levy it for a bridge in their town. Other provisions of the statutes are referred to. There is no need of considering them in detail. Suffice it to say, counsel is right to the extent that they do not fit the situation in hand. They do not apply thereto at all. The law itself, by necessary implication, provides for its execution. In mandatory language it provides for the building, maintenance, and repair of certain bridges by towns and villages jointly, the expense to be borne by them respectively in proportion to the equalized valuation as fixed by the county board. Build, maintain, and repair jointly and at joint expense, is a term not difficult to understand. It is absolutely free from ambiguity. The imposition of the duty necessarily carries with it the right and duty to incur the necessary expense, and in the only way practicable: by means of action by the executive department of the town and the village. The right and duty to incur the expense, again, carries with it by necessary implication the duty of the people of the town to make the necessary appropriation and provide by vote for levying the necessary tax to meet the expenditure. Upon their failure so to do a suit upon implied promise, not the remedy by *mandamus*, is the proper method to vindicate the right of the matter, as is ruled in *Waupun v. Chester,* 61 Wis. 401, 21 N. W. 251.

It is a mistake to suppose that a law imposing upon a municipality the duty to do a particular thing requiring public expenditure is necessarily void because it does not provide in detail procedure to be followed. When the thing to be done

is one of an ordinary kind, and only requires in execution the use of instrumentalities possessed by the corporation, all the details to be followed in performance of the duty imposed are provided for by necessary implication from the imposition itself. From the duty to act springs the legislative authority to act, and act in the customary way. That way is through the executive department of the municipality as to incurring the expense, and action of the people as to providing for the payment. In the case above cited the court held that the right to maintain a bridge, of necessity, included the right to do all those things essential to enjoyment of the privilege. The principle is elementary so far as relates to the ordinary business of conducting municipal affairs. Smith (Beach) Modern Law of Mun. Corp. § 673. It seems that the authorities cited by counsel to the proposition that a law requiring an act to be done without providing expressly for its execution is void, which treat of special situations, do not apply here. If the court were to exercise power to nullify all legislation not providing expressly for all administrative features it would not take long to create confusion of a very prejudicial character.

The further point is made that the law violates sec. 23, art. IV, of the constitution, providing that the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable. The argument at this point is based largely on the idea that the law here deals with the subject of the construction of village bridges in certain cases at the expense, in part, of the towns within which the villages are located. We do not so view the law. It provides expressly that certain bridges within the corporate limits of villages shall be deemed to be town bridges as well as village bridges. So far as they are town bridges they are placed under the control of the towns, and so far as they are village bridges they are placed under the control of the villages. The idea is that each corporation

shall maintain its own bridge. It no more violates the constitutional provision referred to than the law providing for joint maintenance of bridges on town-line roads.

The point is made that the law violates the constitutional right of local self-government. That is answered substantially by what we have said as to the bridges referred to being as much local affairs of the towns as of the villages. The argument that the law provides for construction and maintenance of village bridges at the expense in part of towns is clearly, it is thought, beside the case. But if it were otherwise it would be answered by the rule well established that the maintenance of a bridge on a highway is not a purely, local matter which must be left, necessarily, to the sole discretion of the town within which it is located. The state at large is interested in such matters, and may impose the duty on one municipality or a collection of municipalities to aid in maintaining a bridge in another. *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 36 N. W. 396; Cooley, Taxation (2d ed.) 683; *Will Co. v. People,* 110 Ill. 511. Such laws, this court has held, do not necessarily contravene any constitutional restriction upon legislative interference with local self-government. All that is said as to the importance of preserving inviolate the constitutional guaranty in that regard meets with approval. No one, however, need go outside the decisions of this court, as seems to have been thought was the case, to find emphatic declarations on that line. *O'Connor v. Fond du Lac,* 109 Wis. 253, 265, 85 N. W. 327.

Points that *mandamus* is the proper remedy, that the state did not contemplate power on the part of the village to initiate proceedings to build a bridge at joint expense, and that there is no such thing as a town road or a town bridge in the village corporation, have all been perhaps sufficiently answered by references thereto made, directly or incidentally. This court has held in a similar situation, as we have indicated, that an action upon implied promise is the proper rem-

edy.   The right of the village to take the initiative is no
more given than it is afforded the town.   The relations be-
tween the two, by force of the statute, are the same as those
between joint owners of a milldam.   In case of needed ex-
penditure neither can put the other in default without afford-
ing him an opportunity to participate in considering the
necessity for the expense and manner of incurring the same;
but if one unreasonably refuses to bear his part the other
may proceed and do the whole.   Then, from the circum-
stances and the legal duty the law will raise an implied as-
sumpsit in favor of the active party, for contribution.

True, generally speaking, a town bridge is one wholly
within a town and a village bridge one wholly within a vil-
lage, but the legislature having seen fit to provide that a
town road which is intersected by a village plat and crossed
by a navigable stream, requiring to be bridged to make the
road usable, shall be deemed to be a town road and the bridge
a town bridge to the same extent that it is a village street
and a village bridge as regards the maintenance of the latter,
there is no reason why effect should not be given thereto.
The meaning of the statute on the subject is perfectly plain,
and it must be administered accordingly.

Some question is raised as to whether the term "navigable
stream" as used in the law has reference to navigable as re-
gards public rights: navigable in fact, including what is
called a "floatable stream:" one of sufficient capacity to float
saw logs during some portion of the year.   It is considered
that such is the meaning.   That is the sense in which the
term "navigable" is ordinarily understood, and such ordi-
nary sense is the one always to be adopted in construing leg-
islative enactments in the absence of some ambiguity per-
mitting the adoption of a different meaning.   Under the uni-
form holdings in this state, public waters include streams of
sufficient capacity to float saw logs in spring or other freshets,
though so small that ordinary rowboats cannot be used there-

in without dragging or pushing the same on the bottom in shallow places. *Weatherby v. Meiklejohn,* 56 Wis. 73, 13 N. W. 697; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273. In that light it is considered that the finding as regards the character of the stream is not contrary to the clear preponderance of the evidence.

The further claim is made that the law is invalid, as contravening the constitutional provision inhibiting the state from contracting any debt or being a party in carrying on any work of internal improvement. We cannot perceive sufficient merit in that to warrant more than a passing notice thereof. The making of public improvements by minor subdivisions of the state, like towns, cities, villages, and counties, by means of the ordinary revenues of such municipalities, and under the management of their own officers, has not the remotest relation to the constitutional provision referred to.

After a careful review of the briefs of counsel we do not discover any reason advanced for disturbing the judgment which has not been referred to, except such as do not seem to merit particular attention.

*By the Court.*—The judgment is affirmed.