Seif v. Eaton, 153 Wis. 657.

# APPENDIX.[1]

Town of Seif, Respondent, vs. Town of Eaton, Appellant.

*February 19—March 11, 1913.*

*Highways: Town-line roads: Apportionment for repair: Division of town: Reapportionment: Proceedings: Oral agreement, how far binding: Bridge built by one town: Liability of other town to contribute.*

1. An order apportioning a town-line highway between two adjoining towns for maintenance is abrogated by a division of one of such towns and the creation of a new town out of that part thereof which lies adjacent to the highway.
2. In such a case, sec. 1273, Stats., provides for a new apportionment of liabilities in respect to the highway by agreement of a majority of the supervisors of each town, or, failing that, by a different method, the whole scheme indicating a purpose to avoid a divided responsibility respecting maintenance thereof.
3. To make a valid reapportionment of the highway, no board action of the respective towns is required, nor need the meeting of the supervisors be upon notice specifying its particular purpose. The meeting contemplated by the statute is neither a general nor a special one of the respective town boards, but is a joint meeting of at least a majority of the supervisors of each town, with authority, if they agree, to bind both towns by their order.
4. In making such new apportionment the supervisors have nothing to do with the original order, which is vacated by force of the statute, and no notice is required of a purpose to change it.
5. Whether or not an oral agreement between the supervisors, not formulated in an order, would be binding on the towns if objected to before expenditure of money thereunder, *it seems* that to the extent of its mutual observance it would be binding.
6. Where, pursuant to such an oral agreement, one town for several years maintained a certain portion of the highway and

---

[1] The two cases included in this appendix were not printed in their regular order because of the pendency therein of motions for rehearing, which were afterwards abandoned.

then undertook to rebuild a bridge therein, the fact that the chairman of the adjoining town, as a member of the county board, was instrumental in securing county aid toward the construction of such bridge, did not tend to establish the liability of his town to contribute to the expense, but rather the reverse.

7. Even if there were a joint duty on the part of two adjoining towns to repair or rebuild a bridge upon a town-line road, the mere fact that one has voluntarily solely performed such duty does not render the other liable to repay any part of the expense. Such liability arises only where there has been a previous refusal to join in the burden.

8. Mere use by the public of a town-line bridge so built at the expense of one town is not such an appropriation and beneficial use of it by the adjoining town as would render it liable to pay any part of the cost.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action to recover one half of the expenditure made by plaintiff in constructing a town-line bridge.

The issues are indicated by the following disposition thereof by the trial court; conclusions as to formal matters and capacity to sue being omitted:

In 1901 plaintiff was formed out of part of the town of Weston in Clark county. Such town adjoined the defendant. While the two so joined, a highway was duly established and opened for travel on the line between them and an order was duly made assigning a part thereof to the town of Weston for maintenance. Thereafter a bridge was constructed as part of the highway within the limits so assigned. Thereafter by formation of plaintiff the portion of the highway which included the bridge became a town-line highway between plaintiff and defendant. Thereafter in 1907, the bridge became unsuitable for public use and had to be replaced by a new one. Then the assessed valuation of plaintiff was $284,068, while that of defendant was $752,439. That condition substantially continued down to the commencement of this action. In August and September, 1907,

plaintiff caused the needed new bridge to be constructed at a cost of $960, one half of which it paid and one half was paid by the county of Clark pursuant to the statutes on the subject of county aid in such cases. Application to the county therefor was made by plaintiff, because, on account of the small assessed valuation of property therein, it had statutory capacity therefor, while defendant did not. The latter's supervisors had knowledge of all facts as they occurred. Its chairman was a member of the county board, acted with his associates in passing upon such application, and was chairman of the committee of such board which acted in its behalf in letting the bridge contract. Since construction of the new bridge, the taxpayers of both towns have enjoyed the use thereof in common. Plaintiff duly presented a claim against defendant for reimbursement for one half of its aforesaid outlay. Such proceedings were had in regard thereto that the claim was, in due form, disallowed and capacity of plaintiff accrued to test the rightfulness thereof by action.

Upon the facts, found as aforesaid, the court concluded that, by creation of plaintiff out of the town of Weston, the order as to the maintenance of the highway where the bridge was located was abrogated; and that the defendant, under the circumstances, was equitably liable to plaintiff for one half its expenditure, as claimed. Judgment was therefor so ordered in this action and was rendered accordingly.

For the appellant there were briefs by *R. F. Kountz* and *Geo. L. Jacques,* and oral argument by *Mr. Jacques.* They cited, among other cases, *Montgomery v. Scott,* 34 Wis. 338; *Waupun v. Chester,* 61 Wis. 401, 21 N. W. 251; *Kneeland v. Gilman,* 24 Wis. 39; *Houfe v. Fulton,* 34 Wis. 608; *Witter v. Grand Rapids F. M. Co.* 78 Wis. 543, 47 N. W. 729; *West Bend v. Mann,* 59 Wis. 69, 17 N. W. 972; *Bloomer v. Bloomer,* 128 Wis. 297, 107 N. W. 974; *State v. Childs,* 109 Wis. 233, 85 N. W. 374.

*R. J. MacBride,* for the respondent.

MARSHALL, J.   It is conceded that the creation of plaintiff vacated the order assigning that part of the town-line road where the bridge was located to the town of Weston for maintenance and the responsibility for such maintenance devolved upon plaintiff and defendant, subject to a new arrangement between them apportioning to each its particular part for such purpose.   In such a case sec. 1273, Stats., provides, "A majority of the supervisors of each such town shall, before the time for making the next subsequent tax roll, meet together with a majority of the supervisors of such new town . . . and all of them when so convened shall, if they can agree, make a new order apportioning their liabilities on account of such highway, which shall be filed" as in case of the original order.   In case of failure to make such new division in the manner indicated, the statute provides for accomplishing it in a different manner,—the whole scheme indicating that, as to a laid-out road, there shall be no divided responsibility respecting maintenance thereof.

Counsel for appellant, at the proper time in the course of the trial, endeavored to prove that there was a meeting of supervisors and an arrangement made for maintenance of the bridge, as the statute requires.   All evidence in respect to the matter was rejected, *first,* for want of proof of any discussion at the meeting of supervisors as to changing the original order made in 1898; *second,* for want of proof of any notice to each of the supervisors of the purpose of the meeting.   Before the final ruling was made, evidence had been received, under objection, showing that a majority of the supervisors of each town convened, intending to make a division of the highway, and that a decision was made in respect to the matter; also evidence indicating, or an offer of such evidence, that the agreed arrangement was carried out and that it did not contemplate that defendant should bear any part of the burden of building the bridge, proper.   All evi-

dence introduced or offered was held improper, for the reasons specified, and such as had been received was actually, or in effect, stricken out.

It seems clear that the ruling above mentioned was erroneous. The statute does not provide that the meeting of supervisors shall be upon notice specifying its particular purpose. It merely provides that a majority of the supervisors of one town shall meet with a majority of the supervisors of the other and that they shall make an adjustment to fit the new condition, in case all agree. The statute does not seem to contemplate any board action of the supervisors of the respective towns for the purpose of providing for holding the meeting. No provision is made for notice of any sort. The meeting contemplated is neither a general nor a special one of the respective town boards; but is a meeting of at least a majority of the supervisors of one town with a majority of the supervisors of the other, and with authority, if all agree, to bind both towns; the result to be evidenced by an order made by them and filed for record in the office of the town clerk in each town. Furthermore, no notice was required in any event of a purpose to change the original order made in 1898.

The trial court seems to have dwelt much on that. Why so does not appear. The supervisors in making a new assignment had nothing to do with the original order. That was vacated by force of the statutes. They met to deal with the matter from an original standpoint.

The error of the circuit court, as above indicated, disabled appellant from having the benefit of evidence which might have established a perfect defense to the action. It may be it might not have been able to prove the filing of a new order; but the offer of evidence was ample to make a case with technical accuracy. However, if there were some failure to strictly follow the statute in respect to the matter, yet both towns having, for years, acted upon the faith of the agree-

ment, as there is strong indications that they did, respondent had no legitimate standing to justify it in changing its attitude. Whether an arrangement irregularly made between the two towns would be binding if objected to before expenditure of money thereunder, or form a legitimate basis for compulsory action, is one thing, and whether the irregularity would be material as to expenditures made while both parties were acting on the faith of the agreement being binding, is quite another. The latter seems to be respondent's situation. While there has been some change in the statute since *Montgomery v. Scott,* 34 Wis. 338, the logic thereof supports the idea that a verbal agreement apportioning the burden of maintaining a town-line road is, to the extent of its mutual observance, binding.

So far as this case goes it bears out the idea of appellant that respondent regarded the responsibility for maintenance of the bridge, proper, to be wholly its own. No request to, or demand was made of, appellant in advance of constructing the bridge for its share of the expense which respondent incurred. The county was petitioned to assist plaintiff upon the theory of the bridge being wholly within its jurisdiction. The idea of holding appellant jointly liable seems to have been wholly an afterthought, and is inconsistent with everything which occurred theretofore, either in respect to the relations of respondent with the county or with appellant.

Much is made in the trial court's disposition of the case of the circumstance that the chairman of supervisors of appellant was a member of the county board when respondent petitioned the county in respect to the bridge, acted with his associates on the petition and as a member of the committee of the county board in constructing the bridge. No reason is perceived why his performance of duty as a member of the county board in executing the statute respecting county aid to respondent in maintaining the bridge, considered as its duty, otherwise, to wholly maintain, should count against his

town in this case.    It seems that a circumstance which was, really, strongly persuasive against the theory of liability of appellant to respondent, was turned the other way through a misconception of the real situation.

A further reason for disapproving of the decision below is this: This is not a case, in any view of it, of joint duty to do a particular act, requiring pecuniary outlay, and performance by one after refusal by the other to join in bearing the burden, as in *Waupun v. Chester,* 61 Wis. 401, 21 N. W. 251; *West Bend v. Mann,* 59 Wis. 69, 17 N. W. 972; and *Bloomer v. Bloomer,* 128 Wis. 297, 107 N. W. 974.    The learned circuit judge seems to have relied on the rule of those cases, failing to see, however, absence of one of the circumstances vital to its application; viz. refusal of the town sought to be coerced, prior to performance of the duty, to participate in such performance.    The gist of the matter appears from this language in *Waupun v. Chester, supra:*

"If one of two towns which are jointly bound to keep a bridge in repair refuses to join in making necessary repairs, the other town may make them and recover the proper proportion of the expense thereof from the town so refusing."

The learned circuit judge said:

"There being joint liability and duty, there arises an implied contract to repay.    This rule applies to a case where money or other property is received under such circumstances that the general law, independently of express contract, imposes the obligation to do justice."

The premises are wrong.    Mere joint liability and duty does not give rise to liability of one of two joint obligors to the other who may have voluntarily solely performed such duty.    The implied contract to contribute springs from the necessary payment by one of that which the two, jointly, should pay.    In case of a mere voluntary payment, as in this case, the law does not impose any obligation to contribute.

In each of the authorities cited by the trial court to sup-

port the conclusion reached there was, significantly, the vital element which is wholly absent here, such as *Waupun v. Chester, supra.* The cases cited to the effect that, where a municipality contracts beyond its power, or irregularly, but not in violation of an express prohibition, and obtains the benefit thereof for legitimate municipal purposes, it is liable, if not on the contract then upon equitable principles, such as *Schneider v. Menasha,* 118 Wis. 298, 95 N. W. 94, and *Argenti v. San Francisco,* 16 Cal. 255, are beside the one here. Neither the circumstance of previous agreement nor that of subsequent appropriation are now present. Mere use by the public of a bridge, as in this case, there being no opportunity for the municipality, as such, to accept or reject it, is not such an appropriation as the rule calls for.

On the whole, in any view we can take of this case, it does not seem that appellant had a fair trial, or that legal principles were correctly applied to the facts.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.

Timlin, J., dissents.