STATE EX REL. TOWN OF WEST POINT, Appellant, vs. PRICE, County Clerk, Respondent.

*September 16—October 6, 1914.*

*Bridges: Construction by municipalities: Condition precedent: Vote to levy tax or issue bonds: State and county aid: Location: Approval by U. S. war department.*

1. Sec. 1321a, Stats., as amended by ch. 628, Laws of 1913, presents a complete and harmonious scheme for the building of bridges, and the provision in sub. 1 making it a condition precedent that the city, village, town, or county shall have previously voted to levy and collect a tax or to issue its bonds for such purpose, is applicable to all bridges to be built under the authority of the amended act.

2. A permit granted by the war department of the United States for the building of a bridge, subject to the condition that an old toll bridge just below the location of the proposed bridge

shall be entirely removed within six months after the completion of the new bridge, was not a sufficient compliance with the requirement of sub. 1, sec. 1321a, Stats., that the location and construction of the bridge shall be approved by said war department.

3. A petition for a writ of *mandamus* which fails to set forth the location of a proposed bridge with any certainty except that it is at some point in a town opposite a certain village, does not show a compliance with the statute.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the defendant and against the relator quashing an alternative writ of *mandamus*.

The action was instituted by the town of *West Point,* in Columbia county, against the county clerk of said county to compel him to apportion among the several towns, villages, and cities in Columbia county the sum of $14,000 as the amount of taxes necessary to be raised by Columbia county to defray its share of the cost of constructing a bridge across the Wisconsin river from a point in the village of Prairie du Sac to a point opposite thereto and at or near the southern boundary line of said town of *West Point.*

Pursuant to a request of the town board of *West Point,* the state highway commission estimated the cost of constructing the said bridge at the sum of $70,000. The town of *West Point* and the village of Prairie du Sac voted to construct said bridge, and each municipality provided for the issuance of bonds to defray one fifth of the expense thereof. After doing this the municipalities duly petitioned the state highway commission, setting forth that they had taken the requisite steps to authorize the construction of the bridge and petitioned the commission to take the necessary steps required of it under the law to construct the bridge. The commission found that the bridge is necessary and certified to the county treasurers of Columbia and Sauk counties respectively the

action of the municipalities with respect to the election for issuing bonds, that the amount to be paid by the state into each county treasury was $7,000, and that the amount to be paid by each county was $14,000. Sauk county provided for the payment of its $14,000, but Columbia county has taken no action in the matter, whereupon the town of *West Point* instituted this action.

The circuit court directed judgment to be entered quashing the alternative writ of *mandamus* on the grounds (1) that the writ should run to the county board instead of to the county clerk, on the theory that the county board has the power and discretion to say whether the amount certified by the state highway commission payable by the county shall be raised by taxation in one or more years or by the proceeds of a bond issue; (2) that the approval of the war department of the United States of the location and the construction of the bridge was not obtained; and (3) that before the county can contribute it is necessary that the electors of the county shall have voted to levy and collect a tax or to issue its bonds for the purpose of aiding in constructing the bridge.

The respondent attacks the petition upon the grounds, among others, (1) that the petition and writ do not give the location of the bridge with any sufficient certainty and definiteness; (2) that there is no allegation in the petition that the war department has given its consent; and (3) that the electors of the county have not voted upon the proposition of levying a tax or issuing bonds for the purpose of paying its share of the cost of the bridge.

*William Ryan,* attorney, and *F. L. Gilbert,* of counsel, for the appellant.

*David Bogue,* for the respondent.

SIEBECKER, J. The authority for constructing this bridge across the Wisconsin river is granted by the provisions of sec. 1321a, Stats. (Laws of 1913, ch. 628). By sub. 1 of this

statute the common council of any city and the board of any
village, town, or county are authorized and empowered to
build, purchase, and maintain bridges across streams, or aid
in doing so, provided that such village, town, city, or county
"shall have previously voted to levy and collect a tax or to
issue its bonds for such purpose as provided in sections 1320
and 1321 of the statutes." Sec. 1320 authorizes counties,
towns, cities, and villages to levy and collect a tax, or issue
bonds, for building, purchasing, and maintaining bridges
across streams, or aiding to do so, upon the conditions speci-
fied. Sec. 1321 provides:

"No such tax shall be levied or bonds issued for the pur-
pose mentioned in the preceding section by any county, town
or towns, city or village unless the question of levying such
tax or issuing such bonds shall have been submitted . . . to
a vote of the electors of such county, town or towns, city or
village and adopted . . . ," and such vote shall be by ballot,
the form whereof shall be prescribed by the proper board or
the common council.

It is apparent that the power and authority thus conferred
by this subsection of the statute upon counties, towns, cities,
and villages to levy and collect taxes or issue bonds for this
purpose can be exercised only upon condition that the electors
thereof have voted in favor of levying such a tax or issuing
bonds. It is urged that the portions added to sec. 1321a by
ch. 628, Laws of 1913, amend sub. 1 thereof to the effect that
in all cases where any such bridge is necessarily more than
300 feet in length, and any town, city, or village shall have
voted to construct such bridge as required by this statute,
then the county in which the bridge is located, or the two
counties if the bridge is located on or across the line between
them, shall be required to pay two fifths of the cost of its
construction without submission of the question of levying a
tax or issuing bonds for such a purpose to the vote of the
electors of such county or counties. We must first inquire

whether or not sec. 1321a as amended presents a complete
and harmonious scheme to build such bridges as the act con-
templates, when full force and effect is given to every part
of the act.    An examination of all these parts discloses that
no conflict arises between the provisions of sub. 1 and the
portion added thereto in 1913.    The scheme adopted to se-
cure such bridges and in raising the money therefor by taxa-
tion or a bond issue presents a complete and harmonious
procedure in all its parts and can be enforced in all its detail
in all cases of building bridges under the act.    It is sug-
gested that if the provisions of sub. 1 are applicable to cases
when the bridge exceeds 300 feet in length, embraced in the
amendment, then it is practically impossible to build such
bridges on account of the improbability that the electors of
the county can be advised of the public interest and made to
realize the necessity of constructing such a bridge.    The law
as it existed prior to the amendment of 1913 required such
approval by the electors of the county, which shows a long
and invariable practice and policy of the state to submit such
questions to them for approval, and, as is commonly known,
the people did favor the building of bridges.    It is however
strenuously contended that the context of the amendments
shows a legislative intent that the provisions added to sec.
1321a in 1913 should apply only to bridges of more than
300 feet in length.    This is mainly based upon the claims
that since sub. 1 is a verbatim re-enactment of sec. 1321a,
Stats., as it had stood since 1901, the legislative purpose
must have been to make a modification of the existing scheme,
and that the added provision clearly indicates a new de-
parture from the existing policy by providing state aid and
compulsory county aid, whenever any town, village, or city
had voted to construct or purchase such a bridge, by appor-
tioning the cost between the state, county, and municipality
initiating the proceeding to construct it; and by the addi-
tional provisions which authorize towns, villages, and cities

to file a petition with the state highway commission showing that the petitioner has voted to construct such a bridge, giving its location, and that the petitioner has provided for the payment of its portion of the cost; and the further facts that if the highway commission shall find such bridge to be necessary it shall so certify, "and further certify the amount to be paid by the state as its share for the construction of said bridge and also certify the share to be paid by the county . . . to the county clerk . . . thereof." None of these or other provisions of the amendments (ch. 628, Laws of 1913) contain anything directly or by inference that sub. 1 should not apply in every instance where a bridge is constructed under the authority of ch. 628, Laws of 1913 (sec. 1321a, Stats.). Nor do we perceive how the part requiring that the highway commission, after finding that the bridge is necessary, "shall so certify and further certify the amount to be paid by the state as its share . . . and also certify the share to be paid by the county . . . to the county clerk, . . ." can be interpreted to be a legislative mandate imposing the county's share of the cost of the bridge, regardless of the provisions of sub. 1 calling for a vote and approval of the electors for this purpose. The language of the act just quoted shows that such certification to the county of the share it shall pay is in like words and meaning as the certification to the state of the share it shall pay. This step in the proceeding is evidently for the purpose only of informing the state and county of the amount each is required to pay under the legislative apportionment, if the bridge is constructed. There is nothing in the context of this provision to show that this certification to the county is the levying of a tax, any more so than that the certification to the state of its share of the cost should operate as a tax levy. Nor is there anything in these steps of procedure which negatives the provision requiring submission of the question of levying a tax or issuing bonds for this purpose to the electors of the county. The re-

quirement of having the commission certify the amount of the county's share of the cost to the county clerk is a proper step to inform the county of the amount it must provide in the manner authorized in sub. 1, so that the officers of the county and the electors may be apprised of the amount involved, when voting on the question. We are of the opinion that the legislature intended and expressly provided that the authority conferred by ch. 628, Laws of 1913, on counties, towns, villages, and cities to construct bridges across streams provides that no tax shall be levied or bonds issued for this purpose "unless the question of levying such tax or issuing such bonds shall have been submitted . . . to a vote of the electors of such county, town, . . . city or village and adopted," as required by sec. 1321, Stats.

This statute contains the provision: "and provided further that the location and construction of such bridge shall be approved by the war department of the United States." The certificate obtained from the United States war department grants a permit for the building of the bridge subject to the condition "(3) that the old toll bridge crossing the river just below the location of the proposed bridge shall entirely be removed within six months after the completion of the new bridge." This condition interposes obstacles which may prove to be insurmountable and contains provisions which cannot be considered an approval of the "location and construction of such bridge" by the United States war department, and therefore it cannot be considered a compliance with the provisions of the statute. The alleged location of the bridge set forth in the relator's petition is so indefinite and uncertain that it is well-nigh impossible to determine any location of the bridge, except that it is at some point in the town opposite the village of Prairie du Sac. This leaves the actual location of the bridge so uncertain that we cannot hold it a compliance with the statute.

Under the act as herein construed the county clerk is not delinquent in performing any duty imposed upon him and

therefore no cause exists to *mandamus* him to apportion the county's share of the contemplated construction of this bridge among the towns, cities, and villages of the county.

The view we take of the statute here involved disposes ·of the case, and all other questions suggested in argument need not be considered.

*By the Court.*—The judgment appealed from is affirmed.