STATE EX REL. OWEN, Attorney General, Appellant, vs. STEVENSON and others, Respondents.

*November 17, 1916—January 16, 1917.*

*Bridges over navigable streams: Construction by municipalities: Apportionment of cost: Appropriation by county: Mandamus: Approval of federal authorities: Location of bridge: Crossing of county lines: Eminent domain: Statute construed: Indefiniteness: Constitutional law: Legislative power: Delegation: Highway commission: Taxation: Taxes, by whom imposed: System of town and county government: Classification: Local legislative power: Uniformity in rule of taxation: Inequality in tax burdens: County board: Compelling performance of duty at special meeting.*

1. The provisions of sec. 1321a, Stats. 1915 (relating to the construction of bridges over navigable streams), were enacted as part of the general policy to establish an efficient state highway system, and must be interpreted in the light of such legislative purpose.
2. The county clerk is a proper party to a proceeding by *mandamus* to compel the appropriation by the county board of the county's share of the cost of a bridge over a navigable stream.
3. Under sec. 1321a, Stats., as amended by ch. 418, Laws 1915, it is not essential that permission or approval of the war department of the United States be obtained before the taking of the required steps to provide for the construction and the payment

of the cost of a bridge over a navigable stream, or before a *mandamus* proceeding can be maintained to compel the proper appropriation therefor by a county board. But the highway commission must obtain such approval of the federal authorities before the construction of the bridge is begun, and should do so at an early stage of the proceeding.

4. Although a proposed bridge spanning the Wisconsin river between the village of Prairie du Sac, Sauk county, and the town of West Point, Columbia county, would extend over a portion of the river bed lying within the boundaries of Dane county, and a pier thereof would be constructed on an island lying in Dane county, such bridge is one within the calls of sec. 1321a, Stats. 1915, is located between the village and town named, and they are together to pay one third of its cost, the counties of Sauk and Columbia each one sixth, and the state one third. No part of such cost is chargeable to Dane county or to the town therein over which the bridge would extend.

5. The authority conferred upon municipalities to construct such a bridge necessarily implies that they may exercise the power of eminent domain for the acquisition of whatever land may be necessary for its construction and to connect it properly with the public highways.

6. Sec. 1321a, Stats. 1915, is not so indefinite and uncertain as to render it void.

7. The powers conferred upon the state highway commission by sec. 1321a, Stats. 1915, to find the fact as to the public necessity for a bridge at the place in question, to locate the same, to determine the character and kind of bridge adapted to the location, and to estimate the cost thereof, are not legislative powers, but are either purely administrative or *quasi*-executive in character and such as can properly be delegated to such a state agency.

8. In estimating the cost of such a bridge, which cost is to be paid by the state, the counties, and municipalities in prescribed proportions, the state highway commission does not impose a tax for the building of the bridge. The municipalities themselves, in voting to build the bridge, impose such tax; and the authority so to do may properly be given to them by the legislature.

9. The statute (sec. 1321a, Stats. 1915) does not violate sec. 23, art. IV, Const.—providing for "one system of town and county government, which shall be as nearly uniform as practicable,"—in that it authorizes only those cities, villages, and towns "bordering upon or through which any navigable or meandered stream runs" to build bridges, without granting other municipalities this power. Such a classification of municipalities is appropriate and within the legislative power.

10. Nor is the authority conferred upon those municipalities by the statute repugnant to sec. 22, art. IV, Const., providing for the conferring of local legislative and administrative powers on boards of supervisors.

11. Sec. 1321a, Stats. 1915, does not conflict with sec. 1, art. VIII, Const., providing that "the rule of taxation shall be uniform." The policy of the state in exerting the right of taxation for public improvements of this character cannot be limited or controlled by the benefits it may confer. If actual inequalities of tax burdens result from the statute, that is a matter for legislative consideration.

12. A writ of *mandamus* may be awarded commanding the members of a county board to proceed to perform a duty imposed upon them by law, either at a special meeting of the board or at the regular meeting or an adjournment thereof.

APPEAL from an order of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

The attorney general petitioned the circuit court for Columbia county to issue a writ of *mandamus* to command the county clerk and the members of the county board of Columbia county to call a special meeting of such board pursuant to law to proceed to appropriate the amount of $12,000 in part payment of a bridge to be constructed across the Wisconsin river, to be raised by appropriation, by tax, or by bond as provided by statute.

It appears from the petition that the village of Prairie du Sac in Sauk county and the town of West Point in Columbia county have, pursuant to the statutes, held special meetings of their respective boards and decided to erect a bridge across the Wisconsin river to be located in the village and town. The state highway commission, upon notice of such action by the village and town, held a public hearing and decided that the bridge was necessary, that it would be 500 feet or more in length, prescribed the nature of the bridge, determined its location and the estimated cost thereof. The village of Prairie du Sac and the town of West Point thereafter duly held special elections to provide for the raising of their respective shares of the cost of such bridge and certified to

the state highway commission that such special elections had been held and the payment of their proportions of the cost provided for. The state highway commission certified to the county clerks of Columbia and Sauk counties that the amount to be paid by each county was $12,000, and to the state treasurer that the amount to be paid by the state was $24,000. The county board of Columbia county, after being notified of the action of the state highway commission by the county clerk, has refused to appropriate such amount or any part thereof.

The alternative writ of *mandamus* was issued by the circuit court and in due time the defendants filed their return thereto. The plaintiff entered a demurrer *ore tenus* to the return to the alternative writ. The circuit court ordered that the demurrer be overruled and the alternative writ of *mandamus* quashed. From such order this appeal is taken.

For the appellant there were briefs by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

*Harlan B. Rogers,* for the respondents.

SIEBECKER, J. This action is prosecuted by the attorney general on behalf of the people of the state to compel compliance by the authorities of Columbia county with the provisions of sec. 1321*a,* Stats., as amended by ch. 418, Laws 1915, for the construction of a bridge across the Wisconsin river located by the state highway commission in the town of West Point in Columbia county and the village of Prairie du Sac in Sauk county. Proceedings were taken by petition to the state highway commission by such town and village respectively under the provisions of this statute in September, 1915, asking for a hearing on the question of the construction of such a bridge. The proper procedural steps were taken by the commission for a hearing, and upon such hearing they found and determined that the bridge was a public

necessity and that it would be over 500 feet in length. The commission also fixed the location thereof and determined the character and kind of bridge adapted to the location, and the estimated cost thereof. The subsequent procedural steps required of the town and village and the highway commission under the statute for the construction of such bridge are shown by the petition. The county of Columbia by its authorized officers refuses to appropriate the money to pay its share of the cost of the bridge as fixed by the highway commission under the calls of the statute. The grounds upon which the parties rest their respective claims on the issues presented by this controversy omit due consideration of the change in the public policy of the state respecting the granting of state aid for the improvement of highways of the state. The constitutional amendment authorizing such state aid and the legislation on the subject clearly indicate that this policy, in addition to the financial aid that is being given by the state to promote this public function, includes the establishment of a state-wide system of highways and the creation of a state highway commission as a state agency to execute the power and perform the duties which the state has undertaken to exert directly in the execution of this governmental function. The provisions of sec. 1321a, Stats., were manifestly enacted as a part of the general policy to establish an efficient state highway system, and must be interpreted in the light of such legislative purpose.

The county's refusal to appropriate the amount certified by the state highway commission as its share of the cost of the bridge is based on different grounds, which we will consider separately.

(1) It is contended that the writ issued to compel the county authorities to proceed in the matter must be quashed as to *H. Roy Tongen,* the county clerk of Columbia county, because he is not guilty of any default or breach of duty in the matter. It is apparent that he has taken no action and

it may be necessary for him to act in order to have the proper action taken by the county board.    This makes him a proper party to the proceeding.

(2) The point is made that no *mandamus* can issue until a permit to build such bridge has been obtained from the war department.    The present statute, as amended in 1915, omits the provision of the former statute that ". . . the location and construction of such bridge shall be approved by the war department of the United States." The legislature by such amendment evidently intended that it should not be necessary to obtain such permit before the taking of the required steps by the municipalities, highway commission, and the counties to make provision for the construction and the payment of the cost of the bridge as required by the former statute.    See *State ex rel. West Point v. Price*, 158 Wis. 312, 148 N. W. 873.    The federal statute (30 U. S. Stats. at Large, 1151, ch. 425, sec. 9; 4 U. S. Comp. Stats. 1913, sec. 9971) contains the following regulations regarding the construction of this bridge:

". . . such structures may be built under authority of the legislature of a state across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the chief of engineers and by the secretary of war before the construction is commenced. . . ."

It is clear that the state and federal statutes do not require permission and approval by the federal government for construction of this bridge before the procedural steps providing for the construction and for the payment of the bridge have been taken.    Since the state legislature has authorized the construction of the bridge, it devolves on the state highway commission to obtain the approval of the federal authorities of the location and of the plans of the bridge before construction is commenced.    Although this can be done at any time before construction is commenced, it would seem most desir-

able that such approval be obtained at an early stage of this proceeding to avoid the taking of any further step on the part of all interested parties in case such approval is refused. Manifestly neither party could be required to expend any of the money appropriated for the construction of the bridge before its construction is approved by the federal authorities.

(3) It is strenuously insisted that the bridge as located and placed does not come within the calls of the provisions of sec. 1321a, Stats. The trial court held that the bridge has been in fact located within the counties of Dane, Columbia, and Sauk and hence is not such a bridge as this statute contemplates. The claim is that the provision of sub. 6, sec. 1321a, Stats., providing for the apportioning of the cost of bridges authorized by this act, expressly excludes this bridge. This subsection provides:

"Whenever such municipality or municipalities shall have previously voted the issue of its bonds for the purpose of constructing any such bridge . . . , *the said municipality or municipalities, the county or counties in which they are located, and the state shall pay for the construction of such bridges as follows:* . . .

"(a) Where such bridge is located wholly within one municipality or is constructed by a municipality alone, such municipality shall pay one third the cost thereof. . . .

"(b) When such bridge is located between two municipalities and is constructed by them jointly, then . . ." they shall together pay one third of the cost in the proportion specified.

"(c) The county shall in all other cases pay one third of the cost, except when such bridge is located on or across the line between two counties and in that case each county shall pay one sixth of such cost.

"(d) The state shall in all cases pay one third of the cost of constructing such bridge."

It is obvious from the provisions of (a), (b), and (d) that the municipalities are to pay one third and the state one third of the cost of the bridge. There then remains one third

of the cost to be paid by the proper county or counties included in the statute. It is argued that it appears in the record before us that this is a bridge in the town of West Point, Columbia county, the town of Roxbury, Dane county, and the village of Prairie du Sac, Sauk county, and hence is not a bridge located between the town of West Point and the village of Prairie du Sac so as to be within the provisions of sec. 1321a, Stats. The bridge, according to the maps and plats shown in the record, spans the Wisconsin river between the two municipalities, the town of West Point and the village of Prairie du Sac. In spanning the area of the river bed between these two points it extends over a portion of the river bed which lies within the boundaries of Dane county. The bridge, however, does not abut on any part of Dane county, nor do any highways of Dane county traverse the river bed which is spanned by this bridge. The only contact any part of the bridge can have with the area lying in Dane county is by locating piers to support the bridge in the river bed or on an island of the river. According to the plans, such a pier is to be constructed on an island in the river bed. Does the fact that such pier of the bridge is located within the river bed lying in Dane county locate the bridge in Dane county within the contemplation of the provisions of this section of the statutes? The provisions of this statute providing for the construction of such a bridge clearly indicate that the territory of the municipalities connected by the bridge is deemed to be the place of location of the bridge and therefore impose the burden of part of the costs of construction and all costs of maintenance on them. Furthermore, it seems a speculative notion to say that the location of a pier of the bridge within the river bed determines the location of the bridge. It is more reasonable to say that its location is within the municipalities where the two ends connect with public highways. In a practical sense, and we think in the statutory sense, this bridge is located in the two municipalities it con-

nccts on the opposite sides of the river, namely, in the town of West Point and the village of Prairie du Sac. Such location determines which municipalities and counties must bear the burden of its cost, as provided by the statute, and eliminates the "town of Roxbury" as one of the municipalities connected by the bridge. Therefore such "town of Roxbury" is not chargeable with any part of the cost of the bridge. This interpretation of the statute makes its provisions a complete and practical scheme and effectuates the purpose of the legislature.

It is argued that the municipalities constructing this bridge cannot take the property in the river bed and island therein for this public purpose. This statute being one of the many statutes providing for the construction and maintenance of the highways of the state, it seems a reasonable inference that the legislature intended that the authority conferred on municipalities to construct such a bridge within their borders under the supervision of the highway commission necessarily implies that such municipalities may exercise the power of eminent domain conferred on them to acquire land for this public purpose. If the necessity arises, the power of condemnation may be resorted to for the acquisition of whatever land may be necessary to construct and erect this bridge and properly connect it with the public highways. *Schneider v. Menasha,* 118 Wis. 298, 95 N. W. 94; *Bloomer v. Bloomer,* 128 Wis. 297, 107 N. W. 974. It necessarily follows from this consideration that this bridge is one within the calls of the statute; that the statute is not so indefinite and uncertain as to render it void; and that the cost of the bridge is to be apportioned under the statute as follows: one sixth to be paid by the town of West Point; one sixth by the village of Prairie du Sac; one sixth by the county of Columbia; one sixth by the county of Sauk; and one third by the state.

(4) It is asserted that the statute improperly confers legislative powers on the state highway commission. Stress is

placed on the claim that the powers conferred, authorizing the commission to find the fact of the public necessity for a bridge at the place in question, to locate the same, to determine the character and kind of bridge adapted to the location, and to estimate the cost thereof, are legislative powers which cannot be delegated. It is manifest that all of these duties are either purely administrative or *quasi*-executive in character and nature. Under repeated decisions of this court such duties can properly be delegated to appropriate state agencies. See *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *Milwaukee v. Railroad Comm.* 162 Wis. 127, 155 N. W. 948; *Chippewa & Flambeau Imp. Co. v. Railroad Comm., ante,* p. 105, 159 N. W. 739.

(5) It is contended that the highway commission determines and imposes the amount of tax for defraying the cost of this public improvement, because it is required to "estimate the cost thereof" and what amount is to be paid by the state, counties, and municipalities in the prescribed proportions. True, the commission acts for the state to "estimate the cost" of any such bridge, and the legislature by law declares such estimate shall be the amount the bridge is to cost and that the amount is to be charged to the municipalities, the counties, and the state in the event the municipalities by vote determine to build the bridge. The result of this is that the tax for such improvement is imposed by the municipalities empowered to build the bridge. This can properly be done by the legislature. As declared in *State ex rel. Carey v. Ballard,* 158 Wis. 251, 148 N. W. 1090: "The town as an integral part of the county can appropriately be selected as the representative of all the people of the county for the purpose of determining the desirability, necessity, and amount of the tax to be paid in the county for this public improvement." The right of the municipalities to vote on the question of building the bridge and to reject the same involves a

determination of the question whether or not this public improvement shall be made and the amount of tax that is to be imposed.

(6) The act is assailed as violating the constitutional provision providing for "one system of town and county government, which shall be as nearly uniform as practicable" (art. IV, sec. 23), in that it authorizes only those cities, villages, and towns "bordering upon or through which any navigable or meandered stream runs" to build bridges, without granting other municipalities any such power. This is said to constitute arbitrary and unreasonable classification of municipalities. It is difficult to perceive anything unreasonable in the scheme of imposing on such municipalities the governmental burden of providing and maintaining a part of the highways of the state. This has been the approved and necessary method of the state in performing this governmental function. *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 36 N. W. 396; *Bloomer v. Bloomer,* 128 Wis. 297, 107 N. W. 974; *Rinder v. Madison,* 163 Wis. 525, 158 N. W. 302. These and many other cases in this court have approved the classification of municipalities, on the grounds upon which this act proceeds, as appropriate and within the legislative power. From this it also follows that the respondents' contention that the authority conferred on these municipalities by this act is repugnant to the provision of sec. 22 of art. IV of the state constitution, providing for the conferring of local legislative and administrative powers on boards of supervisors, is without merit.

(7) The point is made that the provisions of sec. 1321*a,* Stats., are in conflict with the provisions of sec. 1 of art. VIII of the constitution, prescribing that "The rule of taxation shall be uniform, . . ." The argument is made that the people of Dane county who are benefited by the bridge are exempt from taxation for its construction and maintenance and that the residents of the cities of Portage and Columbus

and the village of Rio in Columbia county have built and are maintaining bridges without county or state aid and will be required to contribute with other taxpayers to defray the cost of this public improvement and will thus be subjected to an unequal burden in maintaining public bridges. The contention of respondents on this question is fully considered and negatived in the recent case of *Rinder v. Madison,* 163 Wis. 525, 158 N. W. 302. It is there shown that the policy of the state in exerting the right of taxation for public improvements of this character cannot be limited or controlled by the benefits it may confer. As stated in *Land, L. & L. Co. v. Brown,* 73 Wis. 294, 40 N. W. 482, "This court has affirmed the validity of the law concerning the building of bridges, which compels the whole county to contribute to the building of a bridge in one town, and that without regard to the question whether the bridge to be built would be any direct benefit to any other town in the county." See, also, citations on page 531 of the *Rinder Case.* It is there said: "The alleged injustice to residents of cities by compelling them to contribute to the improvement of highways located outside of their municipal territory presents no constitutional objections, and if actual inequalities of burdens result that is a subject for legislative consideration." And so here, if the provisions of sec. 1321a, Stats., operate unequally in the imposition of tax burdens, that is a matter for legislative consideration. Want of uniformity of taxation does not exist in a *local sense* unless a different rate of taxation is imposed on like property within the same jurisdiction.

(8) It is insisted that the petition for the writ is fatally defective for failure to show on its face:

(a) That this bridge is one of six bridges which can be built under this statute within one year.

(b) That the bridge is located within the limits of a highway.

(c) That there are state and county funds available to pay their proportionate share of the cost of the bridge.

(d)  That a special meeting of the county board as prayed for in the petition is necessarily required by law in order to comply with this statute.

As to the last point, (d), it is sufficient to say that the writ of *mandamus* may be awarded commanding the respondents to proceed to perform their duties either at a special meeting of the county board or at the regular meeting or an adjournment thereof.  The other alleged exceptions to the sufficiency of the petition have been examined and they are denied as not well taken without further discussion.

*By the Court.*—The order appealed from is reversed, and the cause remanded to the circuit court with direction that a peremptory writ of *mandamus* issue, returnable with all convenient speed, commanding the county clerk and the county board of supervisors of Columbia county to proceed as required by law to appropriate the amount certified to the county clerk by the state highway commission as the amount which Columbia county is to pay as its proportionate share of the cost of the bridge, pursuant to the provisions of sec. 1321*a*, Stats. 1915.